**Jane DOE, Plaintiff,**

v.

**DOMINION BANK OF WASHINGTON, N.A., Defendant.**

**Civ. A. No. 90–597.**

United States District Court, District of Columbia.

May 16, 1991.

Elizabeth Langer, Boasberg & Norton, Michael B. Waitzkin, Nussbaum & Wald, Washington, D.C., for plaintiff.

John Jude O'Donnell, Thompson, Larson, McGrail, O'Donnell & Harding, Randell Hunt Norton and Joseph Michael Hannon, Thompson, O'Donnell, Markham, Norton & Hannon, Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

On May 10, 1991, at the close of the plaintiff's case in the above-captioned action, defendant Dominion Bank of Washington, N.A. ("Dominion Bank") moved for a directed verdict. After considering the facts presented by the plaintiff in a light most favorable to the plaintiff, and after conducting an exhaustive review of the law in this jurisdiction and in other jurisdictions, the Court, before the commencement of the defendant's case on May 13, 1991, granted Dominion Bank's motion for a directed verdict. Given the serious nature of the case and the likelihood that the Court's ruling shall be reviewed by the Court of Appeals, this Memorandum Opinion is intended to supplement the Court's lengthy bench opinion.

### Discussion

I. Directed Verdict Standard

■ A motion for a directed verdict should be granted when "the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men could not disagree on the verdict." *Vander Zee v. Karabatsos,* 589 F.2d 723, 726 (D.C.Cir.1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979).

The Court must view the evidence in the light most favorable to the non-movant, without weighing the credibility of the witnesses and must draw all reasonable inferences in favor of the non-movant. *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.), *cert. denied,*

464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). With this standard in mind, the Court shall now review the evidence before it.

## II. Evidence Before the Court

This action arises out of a rape and assault on the plaintiff by a third party on May 24, 1989, on the premises of a building at 1430 K Street, N.W. Dominion Bank is the master lease-holder of the building.

The plaintiff testified that the incident occurred around 9:20 A.M., during normal business hours in the building. She testified that she was grabbed and dragged from a building elevator into an office on the vacant ninth floor of the building. At the time of the incident, the plaintiff was an employee of Fiscal Planning Services, Inc., a commercial tenant in the building which was employed for solely commercial purposes.

In place at the time of the rape of Ms. Doe was a security system which consisted of a card activated security system that prohibited access to the building or the elevators except to card holders from 5:00 P.M. to approximately 8:00 A.M. During those hours, an individual could not access a floor unless his or her card was programmed to allow access to the particular floor.

The issue central to Dominion Bank's motion for a directed verdict is whether the rape was reasonably foreseeable under the circumstances. The Court shall, therefore, review the facts of which Dominion Bank, either itself or through its agent, Community Management Company[1] ("CMC"), knew or should have known about incidents of criminal or suspicious conduct at 1430 K Street, N.W.

The plaintiff presented numerous memoranda which were admitted into evidence as notice only.[2] They included the following:

(1) A February 26, 1987, letter from an employee of a tenant to the CMC property manager concerning a wallet stolen from the tenant's office. *See* Plaintiff's Exhibit 19;

(2) A July 30, 1987, CMC Incident & Accident Report reporting a video recorder missing from the tenant offices. *See* Plaintiff's Exhibit 21;

(3) An August 17, 1987, CMC Incident & Accident Report reporting a telephone, tape recorder and set of tapes missing from tenant office. *See* Plaintiff's Exhibits 22 and 23;

(4) A September 7, 1987, Memorandum from Dominion Bank Security Officer to Dominion Bank personnel reporting wallet stolen from Dominion Bank offices. *See* Plaintiff's Exhibit 24;

(5) A September 8, 1987, CMC Incident & Accident Report reporting a handbag missing from tenant office. *See* Plaintiff's Exhibit 26;

(6) A September 10, 1987, letter to CMC from tenant reporting lunches missing from office refrigerator and door leading to outside unlocked and propped open. *See* Plaintiff's Exhibit 27;

(7) A September 17, 1987, CMC Incident & Accident Report reporting a checkbook missing from tenant office. *See* Plaintiff's Exhibit 28;

(8) A January 22, 1988, Memorandum from the Dominion Bank security officer to Dominion Bank personnel informing them that a wallet stolen from George Washington University was found in the men's second floor bathroom in the building;

---

1. For the purposes of the motion for a directed verdict, the Court considered Community Management Company ("CMC") to be the agent of Dominion Bank for the purpose of receiving notice of incidents within 1430 K Street, N.W., and for the purpose of imputing CMC's negligence to Dominion Bank.

2. The memoranda, often consisting of incident reports of petty thefts in the building, included

hearsay statement which could not have been admitted for the truth of the matter asserted absent putting the individual making the report on the stand and subjecting him or her to cross-examination. Therefore, these memoranda were not admitted for the truth of the matter asserted but only for the purpose of establishing notice to Dominion Bank of the reports of these incidents.

(9) A June 9, 1988, report to CMC reporting a watch missing from tenant office within previous two weeks. *See* Plaintiff's Exhibit 38;

(10) A July 20, 1988, report to Dominion Bank reporting handbag missing from tenant office and later found inside stairwell on basement level. *See* Plaintiff's Exhibit 40;

(11) A March 21, 1989, letter from CMC to Dominion Bank reporting that a tenant's offices had been broken into overnight. *See* Plaintiff's Exhibit 43 [3];

(12) A May 22, 1989, CMC Incident Report indicating a microwave stolen from tenant office. *See* Plaintiff's Exhibit 55.

In addition to these reported property crimes, there was also notice that possible unauthorized individuals had gained access to the building. On January 12, 1987, a tenant wrote the CMC property manager to inform her that she had observed "unsavory looking people" wandering around the building and sitting in the lobby. The tenant also wrote that she and her co-workers had found the storage doors of the adjoining building, 1428 K Street, open. *See* Plaintiff's Exhibit 18.

On March 24, 1988, the building cleaning crew reported to CMC that they had found a blood-tainted hypodermic needle, blood-tainted tampons and drug paraphernalia in third floor men's bathroom. *See* Plaintiff's Exhibit 35. On March 28, 1988 CMC reported to Dominion Bank that drug paraphernalia had been found in trash container of third floor men's bathroom. *See* Plaintiff's Exhibits 37 and 38. On August 11, 1988, a tenant reported to CMC that she had found a toilet lid up in penthouse level women's bathroom. *See* Plaintiff's Exhibit 42.

Mr. Dennis Windsor, the property manager of 1430 K Street, testified that he recalled having to dispose of a blood-tainted hypodermic needle on one occasion. This evidence was admitted for both notice of the incident and proof that the incident actually occurred.

There was at least one report, dated April 20, 1989, to CMC that was forwarded to Dominion Bank concerning an intruder in the offices of the Mexican American Legal Defense and Educational Fund ("MALDEF"), a tenant of 1430 K Street, N.W. In a letter to CMC, G. Mario Moreno, Associate Counsel of MALDEF, reported that "a strange street person" had been coming into the MALDEF suite on the seventh floor. Mr. Moreno indicated that the appearance of this man made his employees apprehensive, and warned that something must be done "before a tragedy occurs." *See* Plaintiff's Exhibit 46. Mr. Moreno also testified at trial concerning this intruder. This evidence, therefore, was admitted for the purpose of establishing notice of the incident and for proof that the incident actually occurred.

On May 18, 1989, the Embassy of Djibouti, another tenant, reported to CMC that an intruder, described as a tall black man in unusual attire, had come into its office and then left. He was seen again later in the building. When an Embassy employee reported the intruder to the building's porter/elevator operator, the porter said that he was a "bad man." *See* Plaintiff's Exhibit 51.

### III. Foreseeability of the Rape

■ Under District of Columbia law, a landlord has a duty to use reasonable care to keep safe those common areas of the building retained under his control. *Walker v. Dante,* 58 F.2d 1076 (D.C.Cir.1932). "As a general rule, a private person does not have a duty to protect another from a criminal attack by a third person." *Kline v. 1500 Massachusetts Avenue Apartment Corp.,* 439 F.2d 477, 481 (D.C.Cir.1970).

---

**3.** The Court generously allowed the plaintiff to admit evidence of incidents, for the purpose of notice, which were not substantially similar in character to the sexual assault on the plaintiff since the "requirement of similarity of circumstances is at its strictest when evidence is sought to be admitted to show the dangerousness of a particular condition or situation, although it is 'much relaxed' when the evidence is merely proffered to show notice." *District of Columbia v. Doe,* 524 A.2d 30 (D.C.1987) (citing *Edwards v. Consolidated Rail Corp.,* 567 F.Supp. 1087 (D.D.C.1983)).

However, the law has recognized an aberration of these traditional principles when certain specific factors exist. District of Columbia law has imposed on landlords the duty to take reasonable steps to protect tenants or invitees from injuries resulting from the criminal acts of third parties when that type of criminal activity should have reasonably been foreseen by the landlord. In the seminal case on this issue, *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 439 F.2d 477 (D.C.Cir. 1970), the Court of Appeals held the following:

> The landlord is no insurer of his tenants' safety, but he certainly is no bystander. And where, as here, the landlord has notice of repeated criminal assaults and robberies, has notice that these crimes occurred in the portion of the premises exclusively within his control, has every reason to expect like crimes to happen again, and has the exclusive power to take preventive action, it does not seem unfair to place upon the landlord a duty to take those steps which are within his power to minimize the predictable risk to his tenants.

*Id.* at 481.

*Kline*, therefore, limits the landlord's duty to protect a tenant from the criminal acts of third parties to those situations where two requirements are met. First, the landlord must have had notice of previous similar criminal acts committed in the area in question. Second, the portion of the premises where the criminal act took place must be an area where the landlord has exclusive control. That is, the area must be one where the landlord has the exclusive power to take preventive action. A defendant will be responsible for the damages which result, despite the intervention of another's criminal act, "[i]f the danger of an intervening negligent or criminal act should have been reasonably anticipated and protected against." *Lacy v. District of Columbia*, 424 A.2d 317 (D.C.App. 1980) (citing *St. Paul Fire & Marine In-*surance Co. v. James G. Davis Construction Corp.*, 350 A.2d 751, 752 (D.C.App. 1976).

In light of this analysis set out in *Kline*, the Court must review the facts presented by the plaintiff in this case to first determine whether the assault on the plaintiff was foreseeable. What is remarkable about the plaintiff's case in this instance is what was *not* presented. There was no evidence that the building was located in a high-crime area. In the District of Columbia cases reviewed by the Court, the fact that the building was located in a high-crime area was either proven through direct evidence [4], introduced through the security expert [5], or was actually admitted or conceded.[6]

Furthermore, the plaintiff failed to present any evidence of crimes, especially crimes against persons, in the vicinity of 1430 K Street. Although the plaintiff originally listed the Metropolitan Police crime report statistics in her list of exhibits, the plaintiff never sought to admit the evidence. Evidence such as this was present in the case on which the plaintiff most heavily relies, *District of Columbia v. Doe*, 524 A.2d 30 (D.C.App.1987). In this case, the plaintiff presented evidence, through her expert, that the school from which the plaintiff was abducted was in a statistically high crime area. Also, Metropolitan Police Department crime report statistics for the ten block area surrounding the school were introduced showing that it was, indeed, a high crime area in which assaults, rape, burglaries and robberies had been reported. Further, there was testimony which detailed crimes committed in and around the school, including robbery, burglary, larceny, and arson. *Id.* at 32.

In *Graham v. M & J Corporation*, 424 A.2d 103 (D.C.App.1980), both parties admitted that the neighborhood where the building in question was located was high in criminal activity.

---

**4.** See *District of Columbia v. Doe*, 524 A.2d 30, 32 (D.C.App.1987).

**5.** *Id.*

**6.** See *Graham v. M & J Corporation*, 424 A.2d 103, 105 (D.C.App.1980).

There is no such evidence in the case at hand. The plaintiff neither presented the crime statistics included on her exhibit list nor elicited testimony from her security expert concerning the character of the area where the building is located.

The plaintiff's failure to present evidence that 1430 K Street is located in a high crime area was not the only defect in the case, however. The crucial factor lacking in the plaintiff's case was evidence of any crimes against persons *ever* occurring in 1430 K Street or in the immediate vicinity.

In *Kline*, the Court of Appeals held that a landlord could be held liable for injuries resulting from the criminal acts of third parties when the criminal act in question was "probable and predictable." *Kline*, 439 F.2d at 483. While the Court holds that there need not have been evidence of previous sexual attacks in the building to put Dominion Bank on notice[7], the Court must consider "a combination of factors which give defendants an increased awareness of the danger of a *particular criminal act.*" *District of Columbia v. Doe*, 524 A.2d at 33. Some courts have gone so far as to suggest that the particular type of crime may have to be foreseeable for there to be liability for injuries resulting from an intervening criminal act. *See Lacy v. District of Columbia*, 424 A.2d at 323–24. Although the Court does not require there to be evidence of previous sexual assaults in the building, the character of the crime, that is, the fact that there is a crime against a person, must be taken into consideration in determining foreseeability.

In the instant case, there was no evidence of any previous crimes against persons occurring in or around 1430 K Street.

This fatal flaw distinguishes the case at issue from every reported case in the District of Columbia. In *District of Columbia v. Doe*, 524 A.2d 30 (D.C.App.1987), there was evidence of a robbery on the school's playground as well as sexual assaults and other violent activity in the surrounding area. *Id.* at 34.[8] In *Graham*, 424 A.2d at 106, the plaintiff herself had informed the rental agent of an attempt at robbery through her window. Finally, in *Kline*, the plaintiff presented evidence that there had been an increasing number of assaults, larcenies and robberies being perpetrated against the tenants in and around the building's common areas. *See Kline*, 439 F.2d at 479.

There simply is no such evidence in this case. The plaintiff directs the Court's attention to a Michigan case, *Samson v. Saginaw Professional Building, Inc.*, 224 N.W.2d 843 (Mich.1975). In that case, the Court held that an attack by a mental patient on an employee of a tenant was foreseeable despite the fact that it was the first incident of its type in the building. *Id.* at 848. While recognizing that the Court is not bound by the Michigan Supreme Court's ruling in the case, the Court is further not convinced that the law, as stated by that Court, is the same as that in the District of Columbia. The Court, in determining whether a duty existed to protect tenants from the mental patients who were visiting a clinic in the building, stated that duty rested on the foreseeability of the attack. However, the Court appeared to balance the low probability of such a harm occurring with the magnitude of the potential harm.[9]

---

7. *See District of Columbia v. Doe,* 524 A.2d at 33 ("heightened showing does not require previous occurrences of the particular type of harm.")

8. The Court, while relying on *District of Columbia v. Doe,* is also aware that that case is markedly different from the case at hand. *District of Columbia v. Doe* concerned an abduction from school property. The crucial distinction between that case and the case at hand is that, in a school setting, an individual who is not an employee or student of the school is necessarily an "intruder." However, in the case of a commercial office building, individuals who do not work for any of the tenants go in and out of the building all of the time. Given this distinction, the Court recognizes that the court in *District of Columbia v. Doe* dealt with a drastically different environment in determining foreseeability.

9. The Court also concluded that the risk of a mental patient "running amok" was "substantial to say the least." This Court, after reviewing the facts that the landlord in this Michigan case either knew or should have known cannot agree with the certainty expressed by the Michigan Supreme Court.

While this analysis, on its face, may seem attractive, it is not the analysis applied in the District of Columbia cases. Before reaching whether the landlord was negligent in failing to respond, even minimally, the Court must first determine whether the landlord had a duty to respond at all given the facts the landlord knew or should have known. The Court, therefore, rejects any analysis that factors in a question of reasonableness of the landlord's response in determining the foreseeability of a particular criminal event. Foreseeability of the particular harm should not be confused with the reasonableness of the landlord's response to such a harm.

The facts presented in the instant case suggest that there were a number of property crimes in the summers of 1987 and 1988. The evidence also suggests that there was some evidence of individuals using the third floor bathroom for unauthorized purposes in the spring of 1988. No similar incidents were reported after that time.

As for Mr. Moreno's warning that a tragedy may occur, this statement presented no *fact* from which Dominion Bank or this Court could determine foreseeability. Although it is easy, after the fact, to simply conclude that since Mr. Moreno was correct, his letter established foreseeability, this Court must look to the *facts* of which Dominion Bank was aware or should have been aware in determining foreseeability. As for the facts of the intruder's appearance in the MALDEF suite, as detailed by Mr. Moreno, there was no evidence that this intruder struck any employee or even said anything threatening to any of the MALDEF employees.

A serious assault of some kind must have been foreseeable given what Dominion Bank knew or should have known. The evidence presented by the plaintiff, taken in a light most favorable to the plaintiff and drawing all reasonable inferences in favor of the plaintiff, simply does not establish that such a serious assault on the premises of 1430 K Street, N.W. was foreseeable.

*Conclusion*

As the Court indicated in its bench opinion, the Court has spent a substantial amount of time reviewing the facts presented by the plaintiff and the law of this jurisdiction. As this Court recognized in issuing its summary judgment opinion, the question of premises liability in the context of a solely commercial building is a matter of first impression in the District of Columbia. While the Court held that summary judgment in favor of the defendant was not appropriate on the distinction between residential and commercial properties, this case illustrates that the foreseeability of crime in a building open to the public for business is not a simple one. It is the opinion of this Court that a directed verdict was appropriate in this case since the plaintiff failed to admit evidence that would establish the foreseeability of a sexual assault in 1430 K Street, N.W.