**ST. PAUL FIRE AND MARINE INSUR-
ANCE CO. et al., Appellants,**

v.

**JAMES G. DAVIS CONSTRUCTION CORP.
et al., Appellees.**

No. 9031.

District of Columbia Court of Appeals.

Argued Sept. 16, 1975.

Decided Jan. 12, 1976.

Joseph G. Hitselberger, Arlington, Va., for appellants.

John J. O'Neill, Jr., Washington, D. C., for appellee James G. Davis Const. Corp.

Thomas H. McGrail, Washington, D. C., for appellee Brewood Printing Co.

Before REILLY, Chief Judge, and YEAGLEY and MACK, Associate Judges.

YEAGLEY, Associate Judge:

Appellants as the insurers-subrogees of S. Kriger, Inc., sued appellees Brewood Printing Company and James G. Davis Construction Corporation in negligence following a fire which damaged a building and merchandise owned by Kriger, an oriental art dealer. In this appeal we review a directed verdict entered for the appellees at the close of the appellants' evidence. Appellants contend (1) that they adduced sufficient evidence to withstand appellees' motion for a directed verdict and (2) that the trial court erred in refusing to admit in evidence certain sections of the local Police Regulations offered as proof of a statutory standard of care. We find no error and affirm the judgment.

Appellee Brewood is the owner of a building which abuts an alley shared with the Kriger store and a number of other businesses. At some time in 1969 Brewood contracted with Davis to remodel the third story of the Brewood building. As the work on Brewood's building progressed, roofing paper, wood and other miscellaneous building materials were allowed to accumulate in the alley near the Kriger store. In the early morning hours of September 11, 1969, the debris caught fire causing damage of approximately $25,000 to the Kriger building and the merchandise within. Although there was testimony that the debris came from the construction site, the only evidence offered by the appellants concerning the immediate cause of the fire was the testimony of Thomas Cassidy, a municipal fire inspector, who described the fire as "incendiary", a term he defined as including the possibility that the fire had been started by the act of an arsonist. Cassidy testified that he had found no evidence to suggest that spontaneous combustion, lightning or electrical short circuit

had been the source of the spark which ignited the debris. At the close of appellants' evidence, the court granted a directed verdict for the appellees.

The first issue before us is whether the trial court correctly ruled that the intervening mischief had severed, as a matter of law, the causal connection between the alleged negligence in allowing the debris to accumulate in the alley and the fire that caused the loss to the Kriger property.

In order to withstand a motion for directed verdict, a plaintiff suing in negligence must prove facts sufficient not only to warrant in inference of negligence but also to justify an inference that such negligence was the proximate cause of plaintiff's loss. *Bowman v. Redding & Co.,* 145 U.S.App.D.C. 294, 298, 449 F.2d 956, 960 (1971). This court has defined proximate cause as "that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Wagshal v. District of Columbia,* D.C.App., 216 A. 2d 172, 175 (1966). If the danger of an intervening negligent or criminal act should have reasonably been anticipated and protected against, the defendant will be held responsible for the damages which result despite the entry of another act in the chain of causation. If, however, the intervening act can fairly be said to be that which could not have been reasonably anticipated, plaintiff may not look beyond the intervening act for his recovery. *See, e. g., Graham v. Safeway Stores, Inc.,* D. C.App., 316 A.2d 852 (1974); *Union Storage Co. v. McIntyre,* D.C.App., 256 A.2d 787 (1969).

On review of a directed verdict, we review the evidence with all favorable inferences it allows the appellants, *Gaither v. District of Columbia,* D.C.App., 333 A. 2d 57, 59 (1975); but our inquiry is also disciplined by the consideration that where plaintiff's evidence invites the jury to

speculate as to negligence or causation a directed verdict is properly granted. *Pepsi-Cola Co. v. Waddell*, D.C.App., 304 A.2d 630, 632 (1973).

 The only evidence of the immediate cause of the fire was that it had been set either deliberately or negligently by some unknown third person. Spontaneous combustion was rejected as a source of the fire by appellants' own witness and there. was no evidence that any part of the debris was highly incendiary. Neither was any evidence offered to suggest that something other than arson ignited the debris that caused the instant fire.

This court has held, in considering the liability of a warehouseman for failure to repair a warehouse door, that arson was not a foreseeable result of that negligence. *Union Storage Co. v. McIntyre, supra.* Here we do not know what the intervening act was as appellant has failed to supply it. If, however, as the evidence indicates, it was the act of arson, we hold that it was an act that was not reasonably foreseeable.

While there have been decisions in this jurisdiction permitting recovery in negligence actions despite evidence showing the immediate cause of the injury was due to an intervening criminal act,[1] such cases are clearly distinguishable on the facts since they provide a reasonable degree of foreseeability not present here. There was no evidence to suggest that arson might reasonably have been expected to follow and the only negligence asserted related to the accumulation of trash not shown to be of a highly incendiary nature. Accordingly we conclude that the directed verdict was properly entered.

Appellants' second argument concerning the admissibility of the Police Regulations loses its thrust given our decision on the primary issue of this appeal.

Appellants attempted to establish a statutory standard of care by introducing Article 3, §§ 3(a), 3(d), 3(j), 4 and 7(a) of the Police Regulations which require generally that a contractor obtain a permit before using public space for the storage of building materials.[2] The trial court ruled that

1. *See, e. g. Gaither v. Myers*, 131 U.S.App. D.C. 216, 404 F.2d 216 (1968); *Colonial Parking Inc. v. Morley*, 129 U.S.App.D.C. 151, 391 F.2d 989 (1968); *Schaff v. R. W. Claxton, Inc.*, 79 U.S.App.D.C. 207, 144 F.2d 532 (1944); *Ross v. Hartman*, 78 U.S. App.D.C. 217, 139 F.2d 14 (1943).

2. Sections 3(a), 3(d), 3(j), 4 and 7(a) of Article 3 of the Police Regulations provide in pertinent part:
Sec. 3(a). Persons engaged in erection, alteration, demolition or repair of any building . may occupy the public space with building materials and appliances if a permit is secured from the Superintendent of Permits. Such permit shall specify any condition in addition to the provisions of these regulations upon which it is granted. All applications for storage of materials on the roadway, including debris removed from a building or building site, or material excavated from a building site, shall be approved by the Director of Vehicles and Traffic, subject to the conditions specified in these regulations. All such permits to occupy public space shall be revocable by the Chief, Field Inspection Branch, Department of Licenses and Inspections, at any time when,

in his judgment, the terms of the permit have been violated, or when traffic conditions or the public convenience may warrant such action.

Sec. 3(d). Building material or earth from excavation may be temporarily deposited or stored in a space one-third the width of the alley, in alleys 15 feet or more in width, when authorized by the Chief, Field Inspection Branch, after approval by the Director, Department of Highways, but subject to immediate removal when so ordered by the Chief, Field Inspection Branch. In all cases in alleys the earth and materials shall be deposited in a manner to permit the free use of the alleys for the passage of vehicles, and to allow unobstructed egress from the property abutting on the alley.

Sec. 3(j). Earth taken from excavation and rubbish taken from the building must not be stored upon sidewalks or roadways, but must be taken directly from buildings and removed from day to day. When material or rubbish is removed through window or other opening in the upper stories of a building they shall be well wetted down and removed by

the regulations were not intended as a safety measure to guard against fire but as a routine police regulation to preserve the flow of traffic in public areas. The court denied their introduction.

■ Were the regulations applicable, they would establish negligence only. Appellants would still bear the burden of showing that the negligence proximately caused the damage. *Richardson v. Gregory,* 108 U.S.App.D.C. 263, 266, 281 F.2d 626, 629 (1960), and as we have held, they failed to do so. Nevertheless, we have reviewed those sections offered by appellants and find that we agree with the trial court that the regulations are not intended to protect against property damage by fire but to preserve the flow of pedestrian and vehicular traffic in the public right of way.

As we find no error, the judgment entered in favor of the appellees is hereby·

*Affirmed.*

means of tight chutes extending from the building to a point of discharge as directed or approved by the Chief, Field Inspection Branch.

Sec. 4. No person shall deposit, place, or leave in or upon any of such places designated in section 1 of this article any glass, crockery, nails, tin, or iron cuttings, hoops, wagon tires, wire, or other article or thing liable to wound or injure man or beast or cause damage to personal property.

. . . . .

Sec. 7(a). No person shall, without a permit from the Superintendent of Permits, place, construct, or leave or cause to be placed, constructed or left, in or upon any of the places designated in Section 1 of this article, any obstruction to travel, or place, or leave or cause to be placed or left thereon any deposit dangerous to life and limb; or permit any shrub, bush or tree to extend from private property onto public space, so as to interfere with the free use of such space . . . .