**Mario S. ROMERO, Administrator of the Estate of Orlando Gonzalez-Angel, Appellant,**

v.

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al.**

No. 82–1881.

United States Court of Appeals, District of Columbia Circuit.

Argued March 24, 1983.

Decided Dec. 11, 1984.

As Amended Dec. 17, 1984.

Philip Silverman, Washington, D.C., with whom James E. Rooks, Jr., Washington, D.C., was on brief, for appellant.

Edwin A. Sheridan, Fairfax, Va., for appellee, National Rifle Ass'n of America, Inc.

Randell Hunt Norton, Washington, D.C., with whom John Jude O'Donnell, Washington, D.C., was on brief, for appellee, Robert William Lowe.

Before BORK and SCALIA, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

This appeal from a judgment for the defendants in a wrongful death action challenges two rulings of the District Court. The first refused to instruct the jury that a violation of the District of Columbia Firearms Control Regulation Act of 1975, D.C. Code Ann. §§ 6–2301 to –2380 (1981), could constitute negligence per se or evidence of negligence on the part of a defendant whose stolen target pistol was the instrument of the decedent's death. The second granted judgment *non obstante veredicto* ("n.o.v.") to the other defendant, the owner of the building from which the gun was stolen. Jurisdiction is asserted under 28 U.S.C. § 1332 (1982).

## I

Appellee National Rifle Association ("NRA") maintains its national headquarters in Washington, D.C., consisting of a main building and an annex. The main building contains offices, a firearms museum, a laboratory, and a firing range used for recreational shooting. The annex contains only clerical offices and is connected to the main building by passageways that are closed and locked after business hours.

Appellee Robert W. Lowe, an NRA employee whose office was in the annex, owned a .22 caliber target pistol and ammunition which he regularly used for recreational shooting at the firing range in the main NRA building. When he left work on November 23, 1979, he left the pistol in his office as he sometimes did, locking it and its ammunition in a closet, and hiding the key to the closet in his desk. That evening, four burglars broke into the annex. In their search of the offices, they found the key to Lowe's closet and stole the gun and ammunition. Four days later, after committing several robberies with the gun, one of the original burglars and an accomplice used it to rob Orlando Gonzalez-Angel. When Gonzalez resisted, the accomplice shot and killed him.

Appellant Mario S. Romero, administrator of the estate of Gonzalez, filed this diversity action in the United States District Court for the District of Columbia against Lowe and the NRA, seeking damages for Gonzalez' death under the District of Columbia Wrongful Death Act, D.C. Code Ann. §§ 16–2701 to –2703 (1981), and the District of Columbia Survival Statute, D.C.Code Ann. § 12–101 (1981). At the conclusion of the trial, the judge refused plaintiff's request to instruct the jury that a violation by Lowe of the District of Columbia Firearms Act would constitute either evidence of Lowe's negligence or negligence per se, based on his finding that no violation had occurred.[1] The jury found

---

1. The court also refused to permit the jury to consider the plaintiff's strict liability theory and

that Lowe was not liable but that the NRA was. The District Court granted the NRA's subsequent motion for judgment n.o.v. on the grounds that the NRA did not owe any duty of care to Gonzalez and that the NRA's conduct was not the proximate cause of his death.

Romero appeals the judgment for Lowe on the ground that the trial court erred in refusing to give the requested instruction. He appeals the judgment for the NRA on the ground that the court erred in setting aside the jury's verdict.

## II

We turn first to the directed verdict granted to the defendant NRA. The parties and the District Court have assumed throughout this litigation that the substantive law applicable to this diversity action [2] is that of the District of Columbia. Absent objection, we assume that to be correct. *See Wilson v. Johns-Manville Sales Corp.,* 684 F.2d 111, 114 n. 11 (D.C.Cir.1982).

Under District of Columbia law, three elements are required to render the NRA liable on a negligence theory for damages arising from Gonzalez' death: (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of care; (2) a breach of this duty by the defendant; and (3) an injury to the plaintiff proximately caused by the defendant's breach. *See O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C. 1982). Consideration of only the first and third is essential to our disposition of this appeal. Here and in the District Court the parties have assumed that both of these elements are questions of fact for the jury, and we accept that proposition without de-

ciding it.[3] Thus, duty of care and proximate causation were only proper issues for the court and only proper grounds for judgment n.o.v. if "the evidence, together with all inferences that can reasonably be drawn therefrom [was] so one-sided that reasonable men could not disagree on the verdict," *Vander Zee v. Karabatsos,* 589 F.2d 723, 726 (D.C.Cir.1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979).

■ In the District of Columbia, a defendant can be held liable for damages resulting from intervening acts of third parties "[i]f the danger of an intervening negligent or criminal act should have reasonably been anticipated and protected against ...." *St. Paul Fire & Marine Insurance Co. v. James G. Davis Construction Corp.,* 350 A.2d 751, 752 (D.C. 1976). However, when the intervening act involves *criminal,* rather than *negligent,* conduct by a third party, the ability to anticipate (or foresee) the intervention with the normally required degree of specificity is not enough. " 'The question is not simply whether a criminal event is foreseeable, but whether a *duty* exists to take measures to guard against it ... [, which] is ultimately a question of fairness.' " *Cook v. Safeway Stores,* 354 A.2d 507, 509–10 (D.C.1976) (*quoting Goldberg v. Housing Authority of Newark,* 38 N.J. 578, 583, 186 A.2d 291, 293 (1962)) (emphasis in original). *Cook* held that Safeway was not liable for injuries suffered by a victim of an attempted robbery in one of its stores. The principle of fairness it enunciated was reformulated in a later case, in order to sustain a jury instruction requiring that the particu-

---

claims for punitive damages. These rulings are not challenged on appeal.

**2.** *See* 28 U.S.C. § 1332 (1982). Defendant NRA is a New York corporation, with its principal place of business in the District of Columbia. Defendant Lowe resides in Maryland. Plaintiff Romero is a resident of Virginia, and the beneficiaries of the estate he administers reside in Texas.

**3.** This appears to be the District of Columbia rule on both issues. *See Graham v. M & J Corp.,*

424 A.2d 103, 104 (D.C.1980). With regard to duty of care, District law appears to depart from the weight of authority. *See* W. PROSSER, LAW OF TORTS § 45 at 289 (4th ed. 1971). In light of the parties' failure to contest and brief the point, we decline to consider whether *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires the federal forum to apply its own rules to these issues. *See Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 533–40, 78 S.Ct. 893, 898–902, 2 L.Ed.2d 953 (1958).

lar type of injury be foreseeable. In *Lacy v. District of Columbia*, 424 A.2d 317 (D.C. 1980), a District of Columbia schoolgirl who was sexually assaulted by a janitor brought suit for negligence against a schoolteacher, a guidance counselor, the school principal, and the District as employer. The court held that there was no prejudicial error in an instruction requiring the jury to find that *assault*, rather than merely harm in general, was foreseeable before the defendants could be found liable for the janitor's criminal actions:

> [B]ecause of the extraordinary nature of criminal conduct, the law requires that the foreseeability of the risk be more precisely shown. Thus, although normally the "defendant need not have foreseen the precise injury, nor 'should [he] have had notice of the particular method' in which a harm would occur," in order to establish proximate cause, unless the assault was foreseeable, the defendants in this case had no duty to act.

*Id.* at 323 (*quoting Kendall v. Gore Properties, Inc.*, 236 F.2d 673, 682 (D.C.Cir. 1956)) (footnote omitted).[4] The court suggested in dictum that the foreseeability of specifically *sexual* assault might even be necessary, observing that "it is arguable that the court, by conditioning liability on the foreseeability of 'assaults' rather than the foreseeability of 'sexual assaults,' was more helpful to appellants than the law permits." 424 A.2d at 323–24. *Lacy* described *Cook* as an application of its specific foreseeability standard, *see id.* at 323, though it seems to us more reasonable to regard *Lacy* as one application of *Cook's* fairness standard.

Whether expressed in terms of fairness or specific foreseeability, the District of Columbia rule requires that judgment be entered in favor of the NRA. The recent en banc decision of the District of Columbia Court of Appeals in *Morgan v. District of Columbia*, 468 A.2d 1306 (D.C.1983), is instructive. Plaintiff was kidnapped by her husband, a District of Columbia police officer, who shot her while being taken into custody. Three months before the incident, she had told the police that her husband had threatened her with a gun, and during the two years before that she had several times reported family arguments and beatings. Plaintiff sued the District and received a favorable jury verdict, which was set aside by judgment n.o.v. The Court of Appeals affirmed the trial judge's ruling on the alternate ground that the police department's actions (or failures to act) "were not, as a matter of law, the proximate cause of [plaintiff's] injuries." 468 A.2d at 1318. The court held that "[a] defendant may not be held liable for harm actually caused where the chain of events leading to the injury appears 'highly extraordinary in retrospect.' " *Id.* at 1318 (*quoting from Lacy v. District of Columbia*, 424 A.2d at 321). The court found the facts of *Morgan* sufficiently extraordinary:

> That Officer Morgan would, three months later, show up on her doorstep and subsequently shoot her while being taken into police custody—after not having done so during the previous two years of marital arguments nor having wrongfully fired his weapon during five years on the force—describes a chain of events that is, in retrospect, highly extraordinary.

468 A.2d at 1318.

The chain of events in this case is equally, if not more, extraordinary and unforeseeable, encompassing Lowe's storage of the weapon, a burglary of the annex, a

---

4. As this passage indicates, it makes no difference whether we discuss the NRA's liability in terms of duty of care or proximate causation, "since the fundamental analysis appears to remain constant ... whether we speak of an attenuated chain of cause and effect ... or the actor's obligation toward the party he may injure." *Munson v. Otis*, 396 A.2d 994, 996 (D.C. 1979) (per curiam). This is merely an acknowledgment that the division of tort analysis into the constituent elements of duty, breach, and causation—or into "negligence" and "causation" —is largely artificial. *See Graham v. M & J Corp.*, 424 A.2d at 107 ("the issue of causation is subsumed in the issue of duty"); W. PROSSER,, *supra*, § 42 at 245 (when dealing with questions of duty of care and proximate causation, "circumlocution is unavoidable, since all of these questions are, in reality, one and the same").

search of Lowe's desk, discovery of his hidden closet key, a search of the closet, discovery of the gun and ammunition, use of the gun in a robbery, Gonzalez' resistance to the robbery, and the ultimate murder of Gonzalez by someone not a party to the original burglary. Whether or not this sequence of events would be foreseeable under the applicable legal standard if intervening acts of *negligence* were involved, given the intervention of at least four *criminal* acts, for the NRA "[t]o foresee the convergence of all these events, especially the murder, would constitute an act of prophecy, one based not on reasonable likelihood, but on sheer conjecture." *Romero v. National Rifle Association of America, Inc.,* Civil No. 80–2576, mem. op. at 21 (D.D.C. July 1, 1982) ("mem. op.").

We are unpersuaded by plaintiff's argument that judgment n.o.v. was improper because the jury should have been allowed to infer constructive knowledge of the overnight presence of guns in the annex from the proximity of the firing range in the main NRA building and the absence of written warnings or instructions to employees to take their weapons home at night. Brief for Appellants at 28–29. Even if correct, the argument goes only to the ability of the NRA to foresee the storage of guns at the annex, not to its ability to foresee the theft of guns, and the other events in the casual chain leading to Gonzalez' murder. On plaintiff's reasoning, the owner of *any* building, if on actual or constructive notice that some of his employees were using the NRA firing range, would be required to take precautions beyond locking the building and barring the windows or else face liability for criminal acts perpetrated with stolen guns.[5] Indeed, so would any homeowner who possesses a personal firearm. At oral argument, counsel for plaintiff suggested that the latter might be the law, citing as analogous authority *Palmisano v. Ehrig,* 171 N.J.Super. 310, 313–14, 408 A.2d 1083, 1085 (Super.Ct.App.Div.

1979), *cert. denied,* 82 N.J. 287, 412 A.2d 793 (1980). But *Palmisano* involved an intervening act of *negligence,* not intervening *criminal* acts, and its holding that "plaintiffs are not required to demonstrate that the precise events could have been foreseen; they are only required to demonstrate that some harm might reasonably be anticipated," 171 N.J.Super. at 313–14, 408 A.2d at 1085, is flatly contrary to the District of Columbia rule governing liability for the criminal acts of third parties.

■ In short, the NRA was entitled to the benefit of the general rule of nonliability at common law for harm resulting from the criminal acts of third parties. *See Kline v. 1500 Massachusetts Ave. Apartment Corp.,* 439 F.2d 477, 481 (D.C.Cir. 1970); *Hall v. Ford Enterprises, Ltd.,* 445 A.2d 610, 611 (D.C.1982). The only District cases departing from that rule involved either a special relationship between the parties to the suit—for example, the relationship of landlord-tenant in *Kline,* which gave the landlord exclusive control over modifications to common facilities such as outside doors and vestibules, and thus foreclosed tenants from taking precautions against crime—or a relationship of control between the defendant and the intervening criminal actor—as, for example, in *Hicks v. United States,* 511 F.2d 407 (D.C.Cir.1975), in which a hospital negligently caused the release of a potentially violent patient. While the District of Columbia Court of Appeals recently declined to "reach the issue of whether liability for the criminal acts of third parties can be imposed on the basis of negligence in the absence of a relationship between the parties," *Hall v. Ford Enterprises, Ltd.,* 445 A.2d at 611, it has indicated that cases involving special relationships are fundamentally different, *id.* at 611 n. 4. *See also Cook v. Safeway Stores,* 354 A.2d at 510. No such factor exists here, and we think the general rule of no liability for the criminal acts of oth-

---

**5.** Plaintiff expressly disclaimed any theory based on an agency relationship between Lowe and the NRA. *See* mem. op. at 9 n. 4. Hence, it is ownership of the *annex,* not ownership of the

main building with the firing range or the employment relationship between the parties, that is relevant in this case.

ers governs. The District Court properly set aside the judgment against the NRA.

## III

We next turn to appellant's attack upon the jury verdict for Lowe. In objecting to the District Court's failure to instruct the jury that Lowe's violation of the D.C. Firearms Act was either per se negligence or at least evidence of negligence, appellant is asking us to posit a legislative purpose of rendering persons liable for the independent criminal acts of others. Such a purpose is of course possible. *See Ross v. Hartman,* 139 F.2d 14, 16 (D.C.Cir.1943), *cert. denied,* 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944) (truck owner who left keys in ignition in violation of traffic ordinance held liable for damage negligently caused by third party who had stolen the vehicle; "[t]he fact that the intermeddler's conduct was itself a proximate cause of the harm, and was probably criminal, [was] immaterial"). We think, however, that the District of Columbia courts would require such a purpose to appear with a clarity that is not present here.

Lowe's offense, if there was any, consisted of violation of the following provision:

(a) Except as otherwise provided in this chapter, no·person or organization shall within the District receive, possess, have under his control, transfer, offer for sale, sell, give, or deliver any destructive device, and no person or organization shall, within the District possess or have under his or its control any firearm, unless such person or organization is the holder of a valid registration certificate for such firearm.

D.C.Code Ann. § 6–2311(a) (1981).[6] It is not at all apparent that a purpose of this registration requirement is to prevent criminal acts with stolen firearms. The statutory requirements for registration contain many disqualifications bearing upon the registrant's own responsible use of the weapon (*e.g.,* conviction of certain crimes, adjudication as chronic alcoholic, commitment to mental institution, adjudication of negligence in a firearm mishap causing injury, lack of knowledge of the laws of the District pertaining to safe and responsible use of firearms, and even faulty vision, *see id.* at § 6–2313(a)); but none that appears designed to render the weapons secure against theft. By contrast, the provisions of the Act pertaining to licensed firearms dealers *do* contain requirements that relate to the safeguarding of weapons from theft. *See id.* at § 6–2347(a) ("[n]o licensed dealer shall display any firearm or ammunition in windows visible from a street or sidewalk," and all such devices "shall be kept at all times in a securely locked place affixed to the premises except when being shown to a customer, being repaired, or otherwise being worked on"). The only provision relating to the storage of weapons by owners is § 6–2372, which requires firearms kept at home to be unloaded and disassembled or bound by a trigger lock—which renders them less likely to cause home accidents or acts of violence by family members, but hardly less vulnerable to theft. The legislative history of the Act contains no mention of theft of personal firearms. *See* District of Columbia Council Committee on the Judiciary and Criminal Law, Report to the Council of the District of Columbia of 1976, at 2–6 (Apr. 21, 1976) ("Report"). It sets forth the general purpose of "reduc[ing] the potentiality for gun-related crimes and ... deaths," *id.* at 2, but that seems less likely to refer to the prevention of theft than to the "new and stringent [registration] criteria [which] relegate guns ... to demonstrably responsible types of persons." *Id.* It points out that very few guns used in crimes and recovered by the

---

6. Appellant insists that Lowe violated, not § 6–2311(a), but § 6–2311(b)(3), which exempts a nonresident of the District from the registration requirements if he is "participating in any lawful recreational firearm-related activity in the District, or on his way to or from such activity in another jurisdiction." *See* Reply

Brief for Appellant at 15. It is, to be charitable, peculiar to suggest that an individual can be charged with failure to qualify under an exemption to a criminal statute rather than with violation of the statute itself, and we thus consider § 6–2311(b)(3) irrelevant to our analysis.

police are registered, *id.* at 5—but again, that seems less designed to suggest that registered guns are rarely stolen than to suggest that registered owners are rarely criminals.

Appellant's case is not bolstered by § 6–2312 of the Act, which prohibits the registration of pistols not validly registered when the Act became effective in 1976. It seems to us questionable whether § 6–2311, the registration provision allegedly violated here, can be deemed to have different purposes with regard to the various types of firearms that it covers, but even assuming that possibility, the ban on the registration of handguns, like the ban on the registration of sawed-off shotguns and machine guns (also contained in § 6–2312), is not obviously attributable to a fear of theft. The legislative history suggests, if anything, the contrary, saying that the registration ban "denotes a policy decision that ... handguns and shotguns have no legitimate use in the ... District," Report at 13.

■ In sum, neither the nature of the provision in question nor its legislative history clearly indicates a purpose of preventing crimes by gun-thieves. In this respect it differs fundamentally from such enactments as the prohibition against leaving keys in unattended cars, *see Gaither v. Myers,* 404 F.2d 216, 220–21 (D.C.Cir.1968); *Ross v. Hartman,* 139 F.2d at 15–16, the requirement that employment agencies "record the servant's address and ... investigate her references," *Janof v. Newsom,* 53 F.2d 149, 150 (D.C.Cir.1931), and

the prohibition against a bar owner's serving alcoholic beverages to one who is intoxicated, *see Marusa v. District of Columbia,* 484 F.2d 828, 833 (D.C.Cir.1973), all of which have been held to support liability for the criminal acts of third persons. With such enactments it was clear that the third-party criminal conduct was "the very injury ... which the statute intended to prevent," *Janof v. Newsom,* 53 F.2d at 152. That is not clear here. As discussed in Section II of this opinion, civil liability for the intervening, independent criminal acts of third parties is extraordinary, and District of Columbia courts, in their development of common-law tort rules, have imposed especially stringent requirements to support it. *See Lacy v. District of Columbia,* 424 A.2d at 323–24. We think they would similarly require a clear indication of a statutory purpose producing such liability. Since that does not exist here, the trial judge was correct in deeming the Firearms Act irrelevant. His denial of the requested instruction was proper, and the jury verdict for Lowe was rightly sustained.

For the foregoing reasons, the judgments in favor of both defendants must be

*Affirmed.*