**Robert R. BELL and Janice Bell, Plaintiffs,**

v.

**COLONIAL PARKING, INC., Defendant.**

**Civ. A. No. 91-0592 (GHR).**

United States District Court, District of Columbia.

Oct. 6, 1992.

Gerald I. Holtz, Washington, DC, for plaintiffs.

Thomas A. Farrington, Landover, MD, for defendant.

MEMORANDUM OPINION

REVERCOMB, District Judge.

In the early evening of June 10, 1988, plaintiff Robert R. Bell left his family home in Washington, D.C., to go bowling with his friend Stacy Murrell. Murrell, Bell, and another person set off for a bowling alley in Alexandria, Virginia, in a car driven by Murrell, picking up another friend along the way. After the young men went bowling, they stopped at a Toddle House restaurant on Allentown Road in Maryland to eat. They then headed towards the District of Columbia to drop Robert Bell back at his home. It was now the early morning of June 11, 1988, and, somewhere around Branch Avenue, Robert Bell fell asleep in the car. At approximately 6:15 a.m., according to the police report, the car left the road near the intersection of Branch Avenue and Frankford Street in Southeast Washington, D.C., and crashed into a tree. Stacy Murrell and another passenger were killed. Robert Bell was seriously injured.

At the time of the accident, Robert Bell did not know that the car in which he was riding that night was stolen.[1] The parties do not dispute that Stacy Murrell had taken the car from defendant Colonial Parking, Inc.'s secured lot at 1625 I Street in Northwest Washington, D.C. The owner of the car, Raymond Vicks, had left the vehicle at that garage on the morning of June 10, 1988. The attendant who parked the vehicle was in a rush that morning and may have left the keys in the ignition. At approximately noon, the attendant observed the Vicks vehicle leaving the garage at a high rate of speed and being driven by a young male, whom the attendant knew was not Raymond Vicks. After attempting to chase the vehicle, the attendant notified the manager of the lot. The theft was not reported to the police, however, until after Mr. Vicks returned to claim his car, at approximately 11:56 that night, roughly twelve hours after the theft had occurred.

---

1. Bell testified in his deposition that, when he first got into the car in front of his home, he asked Stacy Murrell who owned the vehicle and was told by Murrell that a friend had loaned him the car. *See* Bell Dep. at 13. The friend who joined them on the way to the Bowling Alley, Dennis Ashton, asked the same question of Murrell and got the same answer. *See id.* at 14–15. Defendant does not contend that Mr. Bell knew at the time that the car was stolen.

Robert Bell and his mother, Janice Bell,[2] brought this diversity action originally against Raymond Vicks and Colonial Parking, Inc. ("Colonial"), claiming that defendants had acted negligently in failing to secure the car to prevent its unauthorized use and in failing to notify the police promptly of its theft. This Court granted Mr. Vicks's unopposed Motion for Summary Judgment on September 26, 1991, and dismissed him from the case. Now before the Court is Colonial's Motion for Summary Judgment, which has been fully briefed and argued. At issue is whether, on the facts set forth above, Colonial owed a duty of reasonable care to Robert Bell. This question is essentially one of law that may properly be decided by the Court on a motion for summary judgment. *See McKethean v. Washington Metropolitan Area Transit Auth.*, 588 A.2d 708, 716–17 (D.C. 1991) (affirming a grant of summary judgment on grounds that the defendant transit authority's duty to plaintiffs did not encompass unforeseen intervening criminal acts).[3] For the reasons set forth below, the Court will grant defendant's Motion and dismiss the case.

It is Colonial's contention that, although it may have been negligent to *someone* in connection with the theft of Mr. Vicks's car, it owed no duty of reasonable care to Mr. Bell because his injuries were the consequence of an unforeseeable intervening criminal act for which Colonial, under District of Columbia common law, cannot be held liable. Colonial rests this argument on the assertion that, in a series of cases beginning in the mid–1970s, the District of Columbia Court of Appeals adopted a "general rule of nonliability at common law for harm resulting from the criminal acts of third parties." *Romero v. National Rifle Ass'n, Inc.*, 749 F.2d 77, 81 (D.C.Cir.1984) (discussing the development of D.C. common law on this issue).[4]

Although this assertion overstates the rule in the District of Columbia, it is clear that in recent years the D.C. Court of Appeals has adopted a restrictive view of liability for the criminal acts of an intermeddler. As that court has explained,

> where an injury is caused by the intervening criminal act of a third party, a defendant is liable for negligence only if the danger of that act "should have been reasonably anticipated and protected against." *Lacy v. District of Columbia*, ... 424 A.2d at 323; *St. Paul Fire & Marine Insurance Co. v. James G. Davis Construction Corp.*, 350 A.2d 751, 752 (D.C.1976); ... If the intervening act "can fairly be said to be that which could not have been reasonably anticipated, plaintiff may not look beyond the intervening act for his recovery." *St. Paul Fire & Marine Insurance Co.*, ... 350 A.2d at 752. Yet " '[t]he question is not simply whether a criminal event is fore-

---

**2.** Ms. Bell is a plaintiff on her son's behalf because he was sixteen years old at the time of the accident.

**3.** "The issue of what duty a defendant owes a plaintiff, involving interpretation of the common law or statutes, is usually treated as a question of law." William W. Schwarzer, *et al., The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 473 (1991). Such questions may properly be decided on a motion for summary judgment. *See id.* (citing *Tindall v. United States*, 901 F.2d 53, 56 (9th Cir.1990)). Although the District of Columbia Court of Appeals has treated the duty element as a question of fact for the jury in cases in which a special relationship, such as that of a landlord to a tenant, existed between the defendant and the plaintiff, *see Graham v. M & J Corp.*, 424 A.2d 103, 104 (D.C.1980), it appears to follow the general rule—that whether a duty is owed is a question of law for the court to decide—absent

such a relationship. *See McKethean, supra;* W. Page Keeton, *et al., Prosser and Keeton on the Law of Torts*, § 37, at 236 (5th ed. 1984).

**4.** The line of cases cited by Colonial includes *McKethean*, 588 A.2d 708; *Lacy v. District of Columbia*, 424 A.2d 317 (D.C.1980); *Cook v. Safeway Stores, Inc.*, 354 A.2d 507 (D.C.1976); *St. Paul Fire and Marine Ins. Co. v. Davis*, 350 A.2d 751 (D.C.1976); *see also, District of Columbia v. Doe*, 524 A.2d 30 (D.C.1987) (not cited by defendant, but containing an extensive discussion of the circumstances under which a defendant may be liable for an intervening criminal act). Thus, the *Romero* case from our court of appeals, upon which Colonial particularly relies, was decided before the most recent and thorough discussions by the D.C. Court of Appeals concerning the scope of duty under district common law in cases involving liability for intervening criminal acts. *See Romero*, 749 F.2d at 79–82.

seeable, but whether a *duty* exists to take measures against it. Whether a *duty* exists is ultimately a question of fairness.'" *Cook v. Safeway Stores*, 354 A.2d 507, 509–10 (D.C.1976) (quoting *Goldberg v. Housing Authority of Newark*, 38 N.J. 578, 583, 186 A.2d 291, 293 ... (1962) (emphasis in original). *District of Columbia v. Doe*, 524 A.2d 30, 32–33 (D.C.1987) (additional citations omitted). In determining whether a duty exists in such cases, the D.C. Court of Appeals "demands a more heightened showing of foreseeability than if [the intervening act] were merely negligent." *McKethean*, 588 A.2d at 716–17. "Because of the 'extraordinary nature of criminal conduct, the law requires that the foreseeability of the risk be more precisely shown.'" *Id.* at 717 (quoting *Lacy*, 424 A.2d at 323). In short, "[t]he defendant will be liable only if the criminal act is so foreseeable that a duty arises to guard against it." *Id.* (citing *Cook*, 354 A.2d at 509–10).

While acknowledging these principles generally, plaintiffs aver that District of Columbia case law provides for a different rule in factual settings involving injury caused by a vehicle stolen from a parking lot as a result of the parking lot owner's negligent conduct. In *Colonial Parking, Inc. v. Morley*, 391 F.2d 989 (D.C.Cir.1968), on which plaintiffs particularly rely, the court of appeals for this circuit held that it was not error for the trial judge to let the jury decide the issue of proximate cause in a case in which the plaintiff, a police officer, was struck by a car that had been stolen from a Colonial Parking lot the day before.

This Court does not read *Morley* to require a finding that a duty exists in cases factually resembling it. The Court believes, moreover, that if that case were to be decided today the D.C. Court of Appeals would view its facts in light of the analysis set forth in *Doe* and *McKethean, supra.* Applying that analysis to this case, Colonial Parking would have a duty to Robert

Bell only if an injury to a person resulting from the collision of a car previously stolen from one of defendant's parking lots was a reasonably foreseeable risk created by defendant's failure to prevent the theft of that car. Plaintiffs can point to only two incidents which could render such a risk foreseeable to Colonial Parking: the facts of the *Morley* case itself; and the theft of another car from the 1625 I Street lot in the winter-spring of 1988, albeit without any evidence of subsequent physical injury to a bystander after that theft. These incidents do not meet the "more heightened showing of foreseeability" required under District of Columbia common law. *McKethean*, 588 A.2d at 716–17. Thus, since "[t]he risk reasonably to be perceived defines the duty to be obeyed,"[5] this Court finds as a matter of law that Colonial Parking owed no duty of reasonable care to Robert Bell that would render it liable for the injuries he suffered in the collision on June 11, 1988.

Accordingly, the Court will enter an Order granting Colonial Parking's Motion for Summary Judgment and dismissing the case.

---

5. *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99, 100 (1928) (Cardozo, J.). Judge Cardozo's statement, which is wholly in agreement with District of Columbia common law as it pertains to this case, reads: "The risk reason-

ably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Id.*