### The BILINGUAL INSTITUTE, INC., Plaintiff,

### v.

### Richard RILEY, Secretary of the United States Department of Education, Defendant.

#### No. 94–0157 (PLF).

United States District Court, District of Columbia.

June 28, 1996.

---

David H. Larry, Manatt Phelps & Phillips, Washington, DC, for plaintiff.

Michael T. Ambrosino, Assistant United States Attorney, Washington, DC, for defendant.

## *OPINION*

PAUL L. FRIEDMAN, District Judge.

During the summer of 1993, the Bilingual Institute, Inc., a post-secondary vocational school, lost its eligibility to participate in federal guaranteed student loan programs because the Department of Education determined that Bilingual's students had defaulted on their student loans at excessive rates. Bilingual's appeal of the Department of Education's decision was incomplete and procedurally defective; thus the school's loss of eligibility was declared final by the Department as of September 23, 1993.

A few months later, in December 1993, the Higher Education Act of 1965 ("HEA"), 20 U.S.C. §§ 1071 *et seq.* (as amended), was

amended to expressly grant schools the right to appeal such losses of eligibility on the ground that the lenders and guaranty agencies, which are required by Department of Education regulations to try to collect on the loans, had been remiss in their loan servicing or collection efforts. The 1993 amendments were made retroactive, allowing schools to file improper loan servicing or collection appeals for losses of eligibility to participate in federal guaranteed student loan programs that resulted from calculations of excessive student default rates for years prior to the effective date of the 1993 amendments. Act of November 20, 1993, Pub.L. No. 103–208, § 5(b)(8), 107 Stat. 2488–89.

The Bilingual Institute took advantage of the retroactive right to appeal its loss of eligibility. It also requested the Department of Education to reinstate its eligibility to participate in the federal guaranteed student loan programs pending the Secretary's decision on the merits of the appeal. The Department of Education accepted the appeal, but refused to reinstate the school's eligibility pending resolution· of the appeal on the ground that Bilingual was ineligible to participate in the federal loan programs at the time it instituted the appeal.

Bilingual filed this action seeking declaratory and injunctive relief. The parties have filed cross motions for summary judgment and agree that the material facts in this case are not in· dispute. Because the only issues to be resolved are legal issues, this case is susceptible to resolution on summary judgment. *See Bell v. Colonial Parking, Inc.,* 807 F.Supp. 796, 797 (D.D.C.1992).

## I. FACTUAL BACKGROUND

### A. *Bilingual's Loss of Eligibility to Participate in Loan Programs*

The Bilingual Institute, Inc., operates two accredited, state-licensed, post-secondary vocational schools in New Jersey. A high percentage of Bilingual's students are low income racial or ethnic minorities. Affidavit of Eduardo L. Gonzalez, Sr. ¶ 8. By participating in federal guaranteed student loan pro-

grams, known collectively as the Federal Family Education Loan ("FFEL") program, Bilingual enabled its students to apply for and obtain loans to pay expenses relating to their attendance at the school. Over fifty percent of Bilingual's operating income and revenues have come from the federal guaranteed student loans received by its students. *Id.*

On August 13, 1993, Bilingual received a letter from the Department of Education dated July 1993, terminating its eligibility to participate in the FFEL program. Def.'s Ex. 1. The letter explained that during fiscal years 1989, 1990 and 1991, the school's former students defaulted on their loans at rates beyond the "cohort default rate" ("CDR") threshold established by the HEA. Def.'s Ex. 1; *see* 20 U.S.C. § 1085(a)(3) (Supp. II 1990); 20 U.S.C. § 1085(a)(2) (Supp.1995).[1] The CDR approximates the rate at which students entering repayment in a given fiscal year default in that same year. It is calculated by dividing the number of current or former students who enter the repayment period in a particular fiscal year by the number of students who default by the end of the following fiscal year. 20 U.S.C. § 1085(m)(1)(A) (Supp.1995). The Department of Education calculates CDRs from information provided by loan guaranty agencies. A school loses its eligibility to participate in the FFEL program if its CDR for each of the three most recent fiscal years exceeds a certain percentage. 20 U.S.C. § 1085(a)(3) (Supp. II 1990); 20 U.S.C. § 1085(a)(2) (Supp.1995). The July 1993 letter from the Department of Education to Bilingual constituted notice of ineligibility to participate in the FFEL program.

The July 1993 letter advised Bilingual that it had a right to administratively appeal the termination of its eligibility and described the procedures and deadlines for appeals. · Def.'s Ex. 1; *see* 20 U.S.C. § 1085(a)(3) (Supp. II 1990); 20 U.S.C. § 1085(a)(2) (Supp.1995). Under Department of Education regulations, the Secretary of Education permits eligible schools that file complete and timely appeals to con-

---

1. A portion of the HEA that was codified at 20 U.S.C. § 1085(a)(3) has been renumbered and currently is codified at 20 U.S.C. § 1085(a)(2). Both codifications will be referenced.

tinue to participate in the FFEL program until the Secretary issues a decision on the appeal. 34 C.F.R. §§ 668.15(f)(7)(i), (ii) (1993); *see also* 34 C.F.R. §§ 668.17(c)(7)(i), (ii) (1995).[2] Bilingual timely sent written notice of its intent to appeal, but failed to submit a complete appeal within 30 days after receiving notice of ineligibility, as required by the relevant regulations. *Id.* By letter dated October 1, 1993, the Department of Education notified Bilingual that the school "failed to submit a complete written appeal by the thirty-day deadline" and that Bilingual's loss of eligibility to participate in the FFEL program therefore was final, "with no further appeal." Def.'s Ex. 4. The loss of eligibility was deemed effective September 23, 1993. *Id.*

Under the HEA, an ineligible institution may not reapply for the right to participate in the FFEL program until the end of the second fiscal year following the fiscal year in which it lost eligibility. 20 U.S.C. § 1085(a)(3)(A) (Supp. II 1990); 20 U.S.C. § 1085(a)(2)(A) (Supp.1995); *see also* 34 C.F.R. §§ 668.15(f)(3), (4) (1993); 34 C.F.R. §§ 668.17(c)(3), (4) (1995). If an ineligible school's CDR continues to remain above the statutory threshold for a fourth year the Department of Education extends the institution's ineligibility for an additional year, thereby enlarging the period of time before the institution may reapply to participate in the FFEL program. Declaration of I. Geneva Coombs ¶¶ 28–29. On August 11, 1994, the Department of Education sent Bilingual a letter notifying the school that its 1992 CDR exceeded the statutory threshold and that, as a consequence, its loss of eligibility would be extended for one additional year, until after September 30, 1996. Def.'s Ex. 9.

### B. Amendments to the Higher Education Act

The December 1993 amendments to the Higher Education Act explicitly permit schools to include in their administrative appeals of a CDR–based loss of student loan program eligibility a defense based on im-

proper loan servicing or collection. 20 U.S.C. § 1085(a)(3) (Supp.1995). The improper servicing defense recognizes that the Secretary of Education must "exclude [from the calculation of the CDR] any loans which, due to improper servicing or collection [by the lenders or guaranty agencies], would result in an inaccurate or incomplete calculation of the cohort default rate." 20 U.S.C. § 1085(m)(1)(B) (Supp.1995). *See Atlanta College of Med. and Den. Careers, Inc. v. Riley,* 987 F.2d 821 (D.C.Cir.1993). The amendments were made applicable "with respect to the determination (and appeals from determinations) of cohort default rates for fiscal year 1989 and any succeeding fiscal year." Act of November 20, 1993, Pub.L. No. 103–208, § 5(b)(8), 107 Stat. 2488–89.

### C. Department of Education Implementing Regulations

On April 29, 1994, the Department of Education published "interim final regulations" implementing the 1993 amendments to the HEA. 59 Fed.Reg. 22278 (April 29, 1994). The regulations became effective on July 18, 1994. 59 Fed.Reg. 36368 (July 18, 1994). The regulations permit institutions that receive notice of excessive CDRs issued during fiscal year 1994 and subsequent years to appeal the calculation based on allegations of improper servicing or collection within ten days of receiving notice of the excessive CDR. 34 C.F.R. §§ 668.17(f)(3)(i), (ii). The regulations also provide that "[f]or cohort default rates issued by the Secretary for federal fiscal years from 1989 to 1991, the [new appeal procedures apply], except that the 10–day period for initiating an appeal with the guaranty agency starts on the effective date of these regulations [July 18, 1994]." 34 C.F.R. § 668.17(f)(3)(x).

The preamble to the April 29, 1994, interim final regulations explains that the 1993 amendments to the HEA

do [ ] not specifically provide for reopening prior final determinations. However, the Secretary has been convinced by the commentators to allow institutions to challenge

---

**2.** In April 1994, the Secretary moved certain provisions of the regulations in effect at the time the events giving rise to this dispute commenced from 34 C.F.R. §§ 668.15(f) and (g) to 34 C.F.R.

§§ 668.17(c) and (d). To the extent that each version of the regulations stands for the same proposition, both will be cited.

their current cohort default rates on the basis of allegations of improper loan servicing or collection. . . . [I]nstitutions which are subject to the loss of FFEL program participation based on cohort default rates for fiscal years 1989, 1990 and 1991 may challenge those rates.

59 Fed.Reg. 22278, 22280 (April 29, 1994). The preamble affirms that "[a]s provided in current regulations, an *eligible* institution that files and pursues an appeal in accordance with regulatory requirements will be able to participate in the [FFEL] until and unless the Secretary issues a decision that the institution's cohort default rates remain above the threshold limits." 59 Fed.Reg. 22281 (emphasis added); *see* 34 C.F.R. § 668.17(c)(7) (1995); 34 C.F.R. § 668.15(f)(7) (1993).

### D. Bilingual's Appeal Under The 1993 Amendments

On August 26, 1994, Bilingual initiated the second appeal of its CDRs for the years 1989, 1990 and 1991, as permitted by the 1993 amendments to the HEA and the Department of Education implementing regulations. Bilingual also requested reinstatement to eligibility pending· a decision by the Secretary on its appeal. On September 21, 1994, the Department of Education informed Bilingual that it would not permit the school to participate in the FFEL program pending determination of the appeal. The Department of Education explained

> Bilingual failed to meet the deadlines it was required to meet in order to continue participation pending appeal. ·This failure, however, did not deprive Bilingual of the ability to challenge the cohort default rates underlying the loss of eligibility, and thereby seek reinstatement into the FFEL programs. It meant simply that Bilingual would not be an FFEL program participant during the time required for Bilingual to complete its appeal and the Department to decide it.

Pl.'s Ex. F at 1. The Department of Education rejected the notion that the 1993 amendments to the HEA or the implementing regulations expanded or revived the right of an institution previously declared ineligible to participate in the FFEL program pending resolution of the CDR appeal.

Bilingual argues that the appeal right created by the 1993 amendments to the HEA and the Department of Education implementing regulations also entitle it to rejoin the FFEL program pending the outcome of its appeals.[3] The Department of Education maintains that because Bilingual was "ineligible" to participate in the FFEL program at the time the new appeals were filed, neither the 1993 amendments nor the implementing regulations grant Bilingual the right to rejoin the FFEL program pending appeal.

### II. ANALYSIS

■ In reviewing the Secretary of Education's construction and interpretation of the Higher Education Act, the Court must follow the analytical framework announced by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "If the statute is clear and unambiguous, 'that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Board of Governors of the Federal Reserve System v. Dimension Financial Corp.,* 474 U.S. 361, 368, 106 S.Ct. 681, 685, 88 L.Ed.2d 691 (1986) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. at 842–43, 104 S.Ct. at 2781).

■ If the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural ˙ Resources Defense Council, Inc.,* 467 U.S. at 843, 104 S.Ct. at 2782. The Court defers to reasonable agency interpre-

---

**3.** In its initial complaint, Bilingual also sought a declaration that certain elements of the pre–1993 amendment appeal procedures were unlawful under the Administrative Procedure Act and a declaration that it is entitled to a new opportunity to appeal the fiscal years 1989, 1990 and 1991 CDR determinations that led to its ineligibility. Complaint ¶ 81. These claims were eliminated in the Amended Complaint.

tations of a statute in order that agencies rather than courts engage in policymaking at the interstices of the statute. *Id.* "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843–44, 104 S.Ct. at 2782. Such regulations are given "controlling weight" unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782. Similarly, unless the Secretary's interpretation of the Department of Education's regulations is "'plainly erroneous or inconsistent with the regulations,'" *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359, 109 S.Ct. 1835, 1850, 104 L.Ed.2d 351 (1989) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)), it is given controlling weight. *See Orengo Caraballo v. Reich,* 11 F.3d 186, 193 (D.C.Cir.1993).

■ In defining which institutions are eligible to participate in federal guaranteed student loan programs, Congress excluded those institutions whose "cohort default rate is equal to or greater than the threshold percentage [set by the statute] for each of the three most recent fiscal years [for a period of two fiscal years] ... unless, within 30 days of receiving notification from the Secretary of the loss of eligibility under this paragraph, the institution appeals the loss of eligibility to the Secretary." 20 U.S.C. § 1085(a)(2). As to those institutions that take advantage of the appeal procedure, Congress delegated to the Secretary of Education the authority to make rules concerning continued participation in the FFEL program by providing that "the Secretary *may* permit the institution to continue to participate in [the FFEL program]." *Id.* (emphasis added). During the entire period relevant to this dispute, the Secretary of Education has exercised that discretion according to regulations that permit schools to continue to participate in the FFEL program only if they have timely filed complete appeals within thirty days of receiving an ineligibility notice. 34 C.F.R. §§ 668.15(f)(7)(i), (ii) (1993); 34 C.F.R. §§ 668.17(c)(7)(i), (ii) (1995).

The 1993 amendments to the HEA did not alter the Secretary's discretion and he did not alter the way he had previously chosen to exercise it. The only relevant change to the statute is that in 1993 Congress made explicit the existence of improper servicing or collection as grounds for an appeal, and made such grounds applicable "with respect to the determination (and appeals from determinations) of cohort default rates for fiscal year 1989 and any succeeding fiscal year." Act of November 20, 1993, Pub.L. No. 103–208, § 5(b)(8), 107 Stat. 2488–89. It did not change 20 U.S.C. § 1085(a)(2), which excludes from eligibility those institutions that have not filed timely appeals of determinations that the schools' "cohort default rate is equal to or greater than the threshold percentage [set by the statute] for each of the three most recent fiscal years...." 20 U.S.C. § 1085(a)(2).

Bilingual nevertheless insists that the clear import of the 1993 amendments is to benefit a class of institutions that had not previously been able to raise improper loan servicing or collection appeals as a defense. It maintains that since some of those institutions may have lost their eligibility before the amendments were enacted, the amendments must be intended to return the institutions to their pre-ineligibility status. The fact remains, however, that the HEA amendments do not address reinstatement of institutions that were previously removed from the FFEL program during the pendency of their new appeals on improper servicing or collection grounds. While the failure of Congress to amend or alter the 30–day appeal/loss of eligibility provision may itself be sufficient to conclude that Congress did not intend to add a new right to reinstatement to eligibility for institutions in Bilingual's position, at a minimum Congress left "a gap for the [Secretary of Education] to fill." *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. at 843, 104 S.Ct. at 2782.

The implementing regulations for the 1993 amendments to the HEA embody the Secretary of Education's view on these issues. Consistent with the HEA itself, the Department of Education's implementing regulations permit appeals based on improper ser-

vicing or collection grounds to be made "[f]or cohort default rates issued by the Secretary for federal fiscal years from 1989 to 1991." 34 C.F.R. § 668.17(f)(3)(x). The regulations also delay the beginning of the ten day time period for filing notice of such an appeal until July 18, 1994.

On the issue of schools continuing to participate in the FFEL program pending resolution of an appeal, the Secretary retained his pre–1993 amendment position that allows an institution that "by the 30th calendar day following the date on which the institution receives notification from the Secretary that its [CDR] exceeds the [statutory] thresholds ... files an appeal that is complete in all respects" to continue to participate in the FFEL program while it awaits the Secretary's decision on the appeal. 34 C.F.R. §§ 668.15(f)(7)(i), (ii) (1993); 34 C.F.R. §§ 668.17(c)(7)(i), (ii) (1995). Thus, both before and after the 1993 amendments to the HEA, the Secretary exercised his discretion by making a final determination of ineligibility whenever a school failed to comply with the appeal procedures in a timely fashion. 34 C.F.R. § 668.15(f)(3) (1993); 34 C.F.R. § 668.17(c)(3) (1995). Both the HEA and the implementing regulations prohibit reapplication in such circumstances for two fiscal years. 20 U.S.C. § 1085(a)(3)(A) (Supp. II 1990); 20 U.S.C. § 1085(a)(2)(A) (Supp.1995); 34 C.F.R. §§ 668.15(f)(3), (4) (1993); 34 C.F.R. §§ 668.17(c)(3), (4) (1995).

The provisions for continued participation in the FFEL program pending a decision on the merits of an appeal apply only to "eligible institutions," *see* 20 U.S.C. § 1085(a), and Bilingual was ineligible based on high default rates at the time it initiated its second appeal of the Secretary's calculation of its 1989, 1990 and 1991 CDRs and its appeal of the Secretary's calculation of its 1992 CDR. Its eligibility ended on September 23, 1993, and that determination of ineligibility was final, with reapplication proscribed for two fiscal years.

Thus, the regulatory provisions concerning continued participation in the FFEL program by "eligible institutions" pending resolution of an appeal are irrelevant. The regulations do not afford Bilingual a right to be reinstated to the FFEL program. ·

The 1993 amendments to the HEA benefit institutions by granting them a retroactive right to appeal CDR determinations.[4] The Secretary's decision not to afford retroactive reinstatement to the FFEL program along with the retroactive right to appeal on improper servicing or collection grounds does not neutralize the benefit afforded by Congress to ineligible schools; if an institution is successful in its new appeal, it will be reinstated to eligibility prior to the second fiscal year after the fiscal year in which it lost its eligibility. Such an outcome is not incompatible with congressional intent or with the clear language of the statute. The Court therefore concludes that the Secretary's interpretation of the HEA is permissible. *See Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82; *Continental Air Lines, Inc. v. Department of Transportation,* 843 F.2d 1444, 1452 (D.C.Cir.1988).

▮ Finally, the Secretary interprets the regulations as offering no opportunity for reinstatement to eligibility to participate in the FFEL program prior to a favorable result on appeal. This interpretation of the Department of Education's regulations is consistent with the plain language of the regulations. *See Robertson v. Methow Valley Citizens Council,* 490 U.S. at 359, 109 S.Ct. at 1850–51. It is also consistent with the reasoning set forth in the letter denying reinstatement to eligibility that was issued by the Department of Education on September 21, 1994, at the time the Department was first faced with these legal questions. Pl.'s Ex. F at 1. Plaintiff has not presented any

---

4.  While the Court understands the importance to Bilingual of reinstatement to eligibility pending resolution of its appeal, the Court also recognizes that Congress has granted Bilingual a second bite at the apple. The improper loan servicing or collection defense was available as a result of the 1993 decision in *Atlanta College of Med. and Den. Careers, Inc. v. Riley,* 987 F.2d 821 (D.C.Cir.

1993). It was then explicitly codified in the 1993 amendments to the HEA. Bilingual has conceded that the ground for its ineffective first appeal would have been that the Department erroneously calculated the CDRs because it failed to exclude loans that defaulted as a result of inadequate servicing or collection efforts by the lenders. Affidavit of Gary A. Musselman ¶¶ 8–11.

**16**

evidence that the Secretary has ever relied on or expressed a different interpretation. The fact that it was this dispute that occasioned the Secretary's explanation of the regulations is irrelevant. *Smiley v. Citibank (South Dakota), N.A.,* —— U.S. ——, ——, 116 S.Ct. 1730, 1732–33, 135 L.Ed.2d 25 (1996); *see Bowen v. Georgetown University Hospital,* 488 U.S. 204, 212, 109 S.Ct. 468, 473–74, 102 L.Ed.2d 493 (1988); *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 294, 94 S.Ct. 1757, 1771–72, 40 L.Ed.2d 134 (1974).

### III. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

SO ORDERED.

### *JUDGMENT*

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendant's motion for summary judgment is GRANTED; it is

FURTHER ORDERED that plaintiff's motion for summary judgment is DENIED; it is

FURTHER ORDERED that judgment on all claims is entered for DEFENDANT; and it is

FURTHER ORDERED that this action is removed from the docket of the Court.

SO ORDERED.