**DISTRICT OF COLUMBIA, Appellant,**

v.

**Jane DOE, et al., Appellees.**

No. 85–1219.

District of Columbia Court of Appeals.

Argued Feb. 25, 1987.
Decided April 13, 1987.

Michele Giuliani, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on brief, for appellant.

Elizabeth H. Hamlin, with whom Patrick J. Christmas, Washington, D.C., was on brief, for appellees.

Before PRYOR, Chief Judge, and NEWMAN and STEADMAN, Associate Judges.

PRYOR, Chief Judge:

The District of Columbia appeals the jury verdict in favor of Jane Doe and her moth-

er and next friend, Mary Doe, who brought a negligence claim against the District after an unknown intruder gained access to the Plummer Elementary School and abducted and raped Jane, a fourth grade student at the school. At the close of plaintiffs' case, the District of Columbia moved for a directed verdict, arguing, *inter alia,* that the District could not have reasonably foreseen the intervening criminal conduct involved and thus could not be held liable for damages to Jane. The trial court denied the motion.

The jury found the District negligent and awarded appellees $250,976.00 in damages. The District filed a motion for judgment notwithstanding the verdict, which was denied. The District, relying on *Lacy v. District of Columbia,* 424 A.2d 317 (D.C.1980), now argues that the abduction and rape were unforeseeable as a matter of law because the District could not have reasonably anticipated nor protected against these particular criminal acts. The District also asserts that the trial court committed reversible error when it admitted testimony concerning offenses of a sexual nature which had occurred at other District of Columbia public schools. We first conclude that probative evidence was presented which shows that the District was put on notice of the danger of this type of criminal activity at Plummer School and that this evidence enabled appellees to put the issue of the District's negligence before the jury. We also conclude that, while the court erred in admitting testimony concerning sex offenses at other District elementary schools, this error was rendered harmless in light of the other sufficient probative evidence showing the District to be on notice of criminal activity of this nature. Accordingly, we affirm.

I

On September 20, 1979, at approximately 11:00 a.m., Jane Doe, a ten-year-old, fourth grade student at Plummer Elementary School, located at Texas and C Streets, Southeast, was chosen by her teacher to supervise a class of second graders while their teacher went to another area of the building for supplies. Shortly thereafter,

Jane was lured away from the second floor classroom by an unknown intruder. The man told her the principal wanted to see her, and that he was outside. As they headed for the rear stairwell exit, the man put his arm around Jane's neck, drew a knife, pressed it to her back and forced her outside. They left the school through the unlocked rear door and through the open gate of the security fence surrounding the back of the school. The man forced Jane across the street and into the woods of Fort Chaplin Park, where he raped her. After the attack, Jane ran back to the unlocked front door of the school and reported the incident. She was taken to District of Columbia General Hospital for examination, and received psychiatric counseling as a result of the attack.

Testimony at trial showed that although the playground adjacent to the rear of the school building was surrounded by a ten to twelve foot high security fence, the gate on this fence usually was left open and unlocked. The back door, through which the intruder forced Jane Doe, consisted of a set of double doors, which, if in proper working order, were designed to close and lock automatically. Because of an alignment problem, the doors did not close tightly and automatically lock; the doors could be locked only if an effort was made to do so. Similar doors in the front of the school also were not closing properly at the time of the incident. An intercom system, which connected the classrooms to the principal's office, was malfunctioning at the time. Testimony also indicated that unaccompanied, unknown adult males often roamed the school hallways without challenge.

Appellees presented a security expert, Dale Moul, who testified that the school's normal security procedures should have included locking the back gate during school hours, proper maintenance of the automatic locking mechanisms on the doors, visual surveillance and screening of visitors, the issuance of passes to visitors, and maintenance of an operational intraschool intercom. Mr. Moul stated his opinion that in the absence of at least some of these security measures, the District did not comply

with a reasonable standard of care for protection of the children at the school.

Mr. Moul also testified that the school was located in a statistically high crime area. Metropolitan Police Department crime report statistics for a ten block area surrounding the school and a similar area surrounding nearby Fort Chaplin Park for the years 1976 through 1979 were introduced. The report revealed that numerous crimes were committed, including murder, assault, rape, burglary, larceny, robbery, and auto theft. There was also testimony which detailed crimes committed in or around Plummer School during this same period. These crimes included robbery, burglary, larceny, and arson.

The District then presented its own security expert, Peter Blauvelt. He testified that it is normal practice to keep school doors locked to control access to the schools, and that it was particularly important to lock Plummer's back door because it is located on the vulnerable blind side of the school building. Mr. Blauvelt stated, however, that he knew of no applicable standard of care regarding the proper type of personal security to be implemented in an elementary school because such schools are rarely the target of crimes directed against persons. According to Blauvelt, elementary schools were generally targets of vandalism and other crimes against property; thus, security measures were primarily designed to combat this problem.

The jury also heard cross-examination testimony, over the District's objection, from Edgar Dews, Director of Security for D.C. Public Schools, that offenses of a sexual nature had occurred against children in other District elementary schools prior to September 20, 1979, and that guidelines had been developed to prevent future sex crimes.[1]

## II

The District's primary argument is that the evidence presented was legally insufficient to permit a reasonable inference of foreseeability of the intervening criminal act with the degree of specificity that our prior decision in *Lacy v. District of Columbia, supra,* demands. The District asserts that, in order for it to be under a duty to protect against the precise harm which came about, sexual assault by an intruder, the attack had to be foreseeable, and that absent a prior occurrence of such a crime on the grounds of Plummer, such attack was unforeseeable as a matter of law. In turn, appellees have consistently argued that the District could foresee the attack, based on its knowledge of the surrounding high crime area, and its failure to implement adequate security, which allowed access to the school from intruders in this high crime area.

 While the District of Columbia is not the insurer of the complete safety of school children, nor is it strictly liable for any injuries which may occur to them, it has an obligation to exercise reasonable and ordinary care for the protection of pupils to whom it provides an education. *See District of Columbia v. Royal,* 465 A.2d 367, 369 (D.C.1983); *District of Columbia v. Cassidy,* 465 A.2d 395, 399 (D.C. 1983) (issue of proximate cause is proper factual question in cases involving claims of negligent supervision of students). In cases such as this, however, where an injury is caused by the intervening criminal act of a third party, a defendant is liable for negligence only if the danger of that act "should have been reasonably anticipated and protected against." *Lacy v. District of Columbia, supra,* 424 A.2d at 323; *St. Paul Fire & Marine Insurance Co. v. James G. Davis Construction Corp.,* 350 A.2d 751, 752 (D.C.1976); *see also Boykin v. District of Columbia,* 484 A.2d 560, 565 (D.C.1984).[2] If the intervening act "can

---

**1.** The District objected on relevancy grounds: "We are talking about one particular school and a particular type of offense." Dews' testimony did not specify the specific types of crimes committed, or whether the offenses had been committed by intruders, students, or school employees. His testimony also did not indicate wheth-

er the guidelines were aimed at preventing intruders from entering school buildings.

**2.** Similarly, § 448 of the Restatement (Second) of Torts (1965) provides:

The act of a third person in committing an intentional tort or crime is a superseding

fairly be said to be that which could not have been reasonably anticipated, plaintiff may not look beyond the intervening act for his recovery." *St. Paul Fire & Marine Insurance Co., supra,* 350 A.2d at 752. Yet " '[t]he question is not simply whether a criminal event is foreseeable, but whether a *duty* exists to take measures against it. Whether a *duty* exists is ultimately a question of fairness.' " *Cook v. Safeway Stores,* 354 A.2d 507, 509–10 (D.C.1976) (quoting *Goldberg v. Housing Authority of Newark,* 38 N.J. 578, 583, 186 A.2d 291, 293, 10 A.L.R.3d 595, 601 (1962)) (emphasis in original).

In *Lacy, supra,* and *Cook, supra,* we have interpreted this fairness standard as requiring a heightened showing of foreseeability in cases involving intervening criminal conduct. While normally a defendant need not foresee the precise injury, or have notice of the particular method in which the harm is brought about in order for the plaintiff to establish proximate causation, *Kendall v. Gore Properties, Inc.,* 98 U.S. App.D.C. 378, 387, 236 F.2d 673, 682 (1956), we held in *Lacy* that a school had no duty to act to protect the student from a sexual assault by a school janitor unless this particular harm was foreseeable. *Lacy, supra,* 424 A.2d at 323. There we noted that, because of the extraordinary nature of criminal conduct, the law requires that the foreseeability of the risk of such conduct must be "more precisely shown" than is usually required in a typical negligence situation. *Id.* In *Cook,* we held that Safeway was not liable for injuries suffered by a victim who attempted to restrain a purse snatcher, despite the fact that the store was located in a high crime area and had employed security guards on previous occasions, because such an occurrence could not

be reasonably anticipated by a storekeeper. *Id.,* 354 A.2d at 508–09.

Relying on *Lacy* and *Cook,* the District argues that it could only be held liable in this case if it had specifically foreseen a sexual assault by an intruder at the school. It further asserts that, absent evidence of previous abductions and sexual assaults by intruders on the grounds of Plummer, the intervening criminal act was unforeseeable, and thus there could be no duty to protect against it. *See Romero v. National Rifle Association,* 242 U.S.App.D.C. 55, 57–58, 749 F.2d 77, 79–80 (1984) (suggesting in dicta that *Lacy* requires specific foreseeability of the precise type of intervening criminal conduct to create duty). Although the District concedes that evidence of crimes against persons in the ten block area surrounding the school was introduced, it maintains that there was no evidence of assaults against students by intruders at the school itself, and that absent such evidence mirroring the facts of this case, the specific foreseeability of *Lacy* is not satisfied, and that a judgment against its liability should have been entered as a matter of law.

We disagree. While *Lacy* requires a heightened showing of forseeability in cases involving intervening criminal conduct, this heightened showing does not require previous occurrences of the particular type of harm, but can be met instead by a combination of factors which give defendants an increased awareness of the danger of a particular criminal act. Here *Lacy* demands that criminal conduct of this nature had to be foreseeable on the part of the District in order for the issue of its liability to be placed before the jury.

▪ In the instant case, sufficient probative evidence was submitted to the jury in order for it to determine whether school

cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*See also* § 449 of the Restatement, *supra,* which provides:

> If the likelihood that a person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act, whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

officials were on notice of the danger to students from assaultive criminal conduct by intruders. This evidence included: crimes against persons in and around the school—an arson in the school and a robbery on the school's playground; sexual assaults and other violent activity in the surrounding area; and deficient school security—the open rear gate, broken doors, malfunctioning intercom, and presence of adult males who freely roamed throughout the school. These factors could be viewed by reasonable factfinders as enhancing the foreseeability of danger from intruders, thereby creating a duty on the part of District officials to protect the students from this type of criminal activity. *See Cook, supra,* 354 A.2d at 508–09.[3] In terms of foreseeability, the facts in *Lacy* presented a much different situation. There the likelihood of a sexual assault by a trusted school employee was remote. In the instant case, however, the probative evidence presented by appellees of a criminally active environment raised a factual issue of foreseeability of intervening criminal conduct sufficient for submission to the jury.[4]

## III

The District also asserts that the court erred in admitting, over its objection, the cross-examination testimony of Edgar Dews, Director of Security for D.C. Public Schools. Dews admitted that sex offenses against students had taken place in other District of Columbia elementary schools prior to September 20, 1979, and that guidelines had been developed to prevent future sex crimes. The District argues that this evidence was irrelevant and prejudicial, pointing out that this testimony did not specify the types of crimes committed at these schools, nor indicate whether the offenses had been committed by intruders, students, or school employees.[5]

█ Evidence of prior incidents is generally admissible to show a defendant's notice or knowledge of a dangerous condition that causes an injury. *Hecht Co. v. Jacobsen,* 86 U.S.App.D.C. 81, 85, 180 F.2d 13, 17 (1950); *accord Edwards v. Consolidated Rail Corp.,* 567 F.Supp. 1087 (D.D.C.1983), *summarily aff'd,* 236 U.S.App.D.C. 135, 733 F.2d 966, *cert. denied,* 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984). Such evidence is also admissible to show the dangerous nature of the specific condition at issue. *Meyers v. Capital Transit Co.,* 75 U.S.App.D.C. 256, 126 F.2d 231 (1942); *accord Edwards, supra,* 567 F.Supp. at 1105.

Basic considerations of relevancy require, however, that "other instances of injuries received should have occurred under *substantially similar circumstances.*" 2 WIGMORE, EVIDENCE § 458, at 573 (Chadbourne rev. 1979) (emphasis in original). Thus, to qualify for admission, prior incidents should have occurred under substan-

---

**3.** *See also* comment f to § 302B of the RESTATEMENT, *supra,* which provides in pertinent part:

It is not possible to state definite rules as to when the actor is required to take precautions against intentional or criminal misconduct. As in other cases of negligence ... it is a matter of balancing the magnitude of the risk against the utility of the actor's conduct. Factors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm, *the temptation or opportunity which the situation may afford him for such misconduct, the gravity of the harm which may result, and the possibility that some other person will assume the responsibility for preventing the conduct of the harm, together with the burden of the precautions which the actor would be required to take.* [Emphasis added.]

Here, the danger posed by an unlocked rear door was apparent from the high level of criminal activity in the neighborhood, and the burden to the District in repairing the doors and implementing other basic security measures was minimal.

**4.** *See also Graham v. M & J Corp.,* 424 A.2d 103 (D.C.1980), and *Spar v. Obwoya,* 369 A.2d 173 (D.C.1977), where we held that faulty doors in apartment buildings in high crime areas raised factual questions of the foreseeability of intervening criminal acts by intruders sufficient to allow the issue of the landlords' liability to go to the jury. In *Graham, supra,* we observed that "where reasonable [persons] might differ over the question of whether an intervening force is a reasonable, foreseeable consequence of defendant's conduct, the issue of probable cause should not be determined as a matter of law." 424 A.2d at 107.

**5.** *See supra* note 1.

tially similar temporal as well as physical conditions. *Edwards, supra,* 567 F.Supp. at 1105–06. *See also Hackett v. District of Columbia,* 264 A.2d 298, 300 (D.C.1970) (excluding evidence of prior accident because "there was no proof that ... the same condition[s] existed at the time of both accidents"). This requirement of similarity of circumstances is at its strictest when evidence is sought to be admitted to show the dangerousness of a particular condition or situation, although it is "much relaxed" when the evidence is merely proffered to show notice. *Edwards, supra,* 567 F.Supp. at 1105, quoting McCormick on Evidence § 200, at 475 (E. Cleary ed. 1972).

■ The District argues that appellees' evidence of prior incidents of sexual offenses at other D.C. elementary schools was wholly unrelated or only tenuously related to the events at Plummer and was therefore irrelevant. We agree that the evidence of assaults at other schools was vague and undifferentiated, leaving it unclear whether the assailants were intruders, school employees, or other students. We conclude, therefore, that appellees did not demonstrate that these prior occurrences were substantially similar to the facts of this case. Accordingly, we find error on the part of the trial court in admitting this evidence over the District's objection.

When reviewing claims of error on the admissibility of evidence, this court will find an abuse of discretion and reverse only if a party's substantial rights are affected. *Pyne v. Jamaica Nutrition Holdings Ltd.,* 497 A.2d 118, 126 (D.C.1985). Given the weight of probative evidence presented to the jury, of crimes against persons in the neighborhood, and of crimes in and around the school, we conclude that the District's rights were not substantially affected, and the jury's verdict was not substantially swayed by the error. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).[6]

Accordingly, the judgment of the trial court is

*Affirmed.*

---

**6.** In reaching this conclusion we also observe that the District was the beneficiary of a "substantial factor" proximate cause instruction that fully complied with the requirements of *Lacy, supra.* The court instructed the jury:

> An injury or damage is said to have been proximately caused by an act or a failure to act whenever it appears from a preponderance of the evidence that the act or omission played a substantial part in bringing about the injury or damage. Moreover, it must be shown that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.
>
> \* \* \* \* \* \*

Where the injury to the plaintiff was caused by the intervening act of a third party, the District of Columbia is liable for negligence only if the danger of that act should have been reasonably anticipated and protected against. If the intervening act can fairly be said to be that which could not have reasonably been anticipated, plaintiff may not look beyond the intervening act for her recovery. In other words, because of the extraordinary nature of criminal conduct, the law requires that the foreseeability of the risk be more precisely shown. Unless the kidnapping and sexual assault were foreseeable, the defendant had no duty to act.