**Mary H. CLEMENT, Appellant,**

v.

**PEOPLES DRUG STORE, INC., Appellee.**

No. 92–CV–201.

District of Columbia Court of Appeals.

Argued Oct. 15, 1993.
Decided Dec. 2, 1993.

David T. Smorodin, with whom Allen T. Eaton and W. David Allen, Washington, DC, were on the brief, for appellant.

Jonathan A. Constine, with whom A. Lee Bentley and William D. Nussbaum, Washington, DC, were on the brief, for appellee.

Before TERRY, SCHWELB and KING, Associate Judges.

KING, Associate Judge:

This is an appeal by the plaintiff in this civil action, from a judgment entered after the grant of a defense motion for directed verdict, where the trial court found that appellant failed to establish a prima facie case of negligence. Appellant asks this court to hold that an employer, here appellee Peoples Drug Store ("Peoples"), is liable for damages to the survivors of one of its employees, who was murdered by an unknown third person when the employee departed the premises after closing time, where some criminal activity had been reported in the vicinity of the store. We conclude, under these circumstances, that there is no basis for holding the employer liable and, therefore, we affirm the trial court.[1]

## I.

Shortly after midnight on July 5, 1988, James Clement, manager of the Peoples Drug Store at the Naylor Road Shopping Center, was shot and killed by an unknown assailant. The shooting occurred after Clement and security guard Jerome Brown secured and closed the store premises. Brown headed toward the bus stop and Clement began walking toward his car, where his wife was waiting, in the parking lot directly in front of Peoples. As he neared his car, a red Jaguar which had been parked further away in the same lot started up and sped toward him. The Jaguar stopped, and a man armed with a pistol stepped out and ordered Clement to drop the bag he was carrying. Although he complied and dropped his briefcase,[2] Clement was shot once in the chest. He died shortly afterward as a result of the wound. The assailants fled without taking the briefcase or any other property from Clement.

Appellant, the deceased's widow, filed this action seeking damages from Peoples for

---

1. Appellant also claims that the trial court "erred in excluding the testimony of an expert witness who would have testified that "the lighting [outside the store] was below industry standards and would have demonstrated that the lighting was poor enough to provide excellent covering and concealment for the robbers while they observed their victim." Because we find that appellant failed to sustain her burden of showing that the murder was foreseeable, we need not reach that issue.

2. The record is silent concerning the contents, if any, of the briefcase; however, Clement was not carrying any money from the store.

their failure "to exercise proper care in ensuring a properly lighted and reasonably safe and secure environment in the vicinity of its store...." Further, appellant claimed that Peoples knew, or should have known, of the inherent danger due to the store's location in a high crime area and failed to provide adequate security.

At trial the plaintiff presented the testimony of an expert criminologist, Dr. William Bopp, who testified that Peoples was "on notice" about the dangerousness of the shopping center and that Clement's death was reasonably foreseeable. Dr. Bopp also testified that Peoples should have implemented a policy that included an armed guard going out into the parking lot, prior to the store's closing at night, to inspect the parking lot area to ensure the safety of departing employees. If the guard found any suspicious activity, the police should then be notified.

At the close of appellant's case-in-chief, Peoples moved for a directed verdict. The trial court granted the motion, ruling that "the record includes no evidence that would permit a reasonable juror to find that Peoples had or should have had a heightened or increased awareness of the danger of this particular criminal act." Judgment was accordingly entered for Peoples, and this appeal followed.

## II.

We begin our analysis by observing that if "a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the Court may grant a motion for judgment as a matter of law...." Super.Ct.Civ.R. 50(a)(1). When a party moves for a directed verdict, the evidence must be viewed "in the light most favorable to the party against whom the verdict is sought." *Bauman v. Sragow*, 308 A.2d 243, 244 (D.C.1973) (citation omitted). A verdict may be directed only if it is clear that the plaintiff has not established a prima facie case. *See Marshall v. District of Columbia*, 391 A.2d 1374, 1379 (D.C.1978).

In our review of a directed verdict we are required to give the non-moving party "the benefit of all reasonable inferences from the evidence." *Corley v. BP Oil Corp.*, 402 A.2d 1258, 1263 (D.C.1979). After reviewing this record in its most favorable light, we are satisfied, as a matter of law, that there was insufficient evidence to establish a prima facie case of negligence on the part of Peoples. "At trial, the plaintiff bears the burden of proving negligence by a preponderance of the evidence. He must establish the applicable standard of care, show that the defendant deviated from it, and demonstrate that the defendant's conduct was the proximate cause of his injury." *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 199 (D.C.1991) (citing *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C.1988)). Here the injury was directly caused by an intervening criminal act committed by some unknown third party. Under those circumstances, "[t]he defendant will be liable only if the criminal act is so foreseeable that a duty arises to guard against it." *McKethean v. Washington Metro. Area Transit Auth. ("WMATA")*, 588 A.2d 708, 717 (D.C.1991). Therefore, in this case, in order to survive a motion for a directed verdict, appellant was obligated to present evidence establishing that the murder was so foreseeable that it became Peoples' duty to guard against it by adhering to a recognized standard of care, that Peoples breached that standard of care, and that the failure to exercise due care proximately caused Clement's death. Because we conclude that appellant did not show that the murder was reasonably foreseeable, and that her failure to make such a showing is dispositive against her claim, we limit our analysis to that issue.

The only evidence presented by appellant relating to that point was provided by Dr. Bopp, who testified that in his opinion the murder was reasonably foreseeable. Dr. Bopp relied upon police reports of criminal activity in the shopping center for the three years prior to the shooting of Clement. In analyzing Dr. Bopp's testimony, the trial court observed that "[m]uch of Dr. Bopp's opinion was based on his view that there is a special or increased danger at opening or particularly, at closing time. However, the incidents on which he relied did not include a

single incident occurring at either opening or closing time at any store in this shopping center."

Specifically, Dr. Bopp testified that Peoples did not follow reasonable procedures and opined that Peoples had "[n]otification in advance that serious crime had occurred in the past and would continue to occur...." According to Dr. Bopp, Peoples was negligent because the standard of care required reasonably prudent operators of a drugstore to: (1) "keep good track of crime. Find out what kind of crime is going on, not just in the store but in the shopping center"; (2) "make sure that proper illumination is in effect in the parking lot and around the store"; and (3) "have the guard go out in the parking lot, make sure there are no loiterers around when the store closes and then let the manager and then the guard leave safely." As noted, we do not decide whether the standard of care, as defined by Dr. Bopp, was legally sufficient since we are satisfied that under the circumstances the murder was not reasonably foreseeable.

We have previously observed that "[w]hen an intervening act is criminal, this court demands a more heightened showing of foreseeability than if it were merely negligent. Because of 'the extraordinary nature of criminal conduct, the law requires that the foreseeability of the risk be more precisely shown.'" *McKethean, supra,* 588 A.2d at 716–17 (quoting *Lacy v. District of Columbia,* 424 A.2d 317, 323 (D.C.1980)). In *Lacy,* a mother and daughter brought a negligence action against the District of Columbia for damages caused by a school janitor's sexual assault on the daughter and the jury found in favor of the District. The jury was instructed that the District could only be liable if plaintiffs had shown that the "[District] ... had knowledge or should have had knowledge of the likelihood that [the child] would be assaulted" while at the school. *Lacy, supra,* 424 A.2d at 322. In affirming the trial court, this court observed that "a defendant will be responsible for the damages which result, despite the intervention of another's act in the chain of causation, if the danger of an intervening negligent or criminal act should have been reasonably antici-

pated and protected against." *Id.* at 323 (quoting *St. Paul Fire & Marine Ins. Co. v. James G. Davis Constr. Corp.,* 350 A.2d 751, 752 (1976)). We recently reaffirmed this requirement in *McKethean v. WMATA, supra,* 588 A.2d at 716–18. In *McKethean,* a speeding driver under the influence of drugs and alcohol struck a median strip on M Street, S.E., lurched out of control, and killed seven people standing at a Metro bus stop. Appellants sought to recover damages from the District "because it negligently failed to maintain the crumbling median ... [and] the defective median proximately caused the accident...." *McKethean, supra,* 588 A.2d at 716. In affirming the trial court's grant of summary judgment in favor of the District, we held, relying on *Lacy,* that criminal acts are of "extraordinary nature" and a more "heightened showing of foreseeability" is required. *Id.* at 716–17.

Appellant contends, however, she met this heightened standard as the standard is defined in *District of Columbia v. Doe,* 524 A.2d 30, 33 (1987), which held that a "combination of factors" were such that school officials could reasonably anticipate the particular criminal conduct. We do not agree that *Doe* provides a basis for concluding that the criminal act committed in this case was foreseeable.

In *Doe,* a young female student was abducted from inside her elementary school classroom and raped by an unknown intruder. A jury found negligence on the part of school officials and awarded damages. On appeal, the government argued that "the District could not have reasonably foreseen the intervening criminal conduct involved and thus could not be held liable for damages to [the child]." *Doe, supra,* 524 A.2d at 31. This court rejected that argument, concluding that sufficient probative evidence was presented to allow the jury to find that school officials were on notice that intruders who were potentially dangerous to the students were regularly on school grounds and inside the school.

In support of that holding we observed that there was evidence that "crimes against persons [had been committed] in and around the school ... [including] a robbery on the

school's playground; sexual assaults and other violent activity had occurred in the surrounding area"; and the school security system was defective due to an open rear gate, doors that would not lock, a malfunctioning intercom, and "adult males who freely roamed throughout the school." *Id.* at 34. We concluded that "[t]hese factors could be viewed by reasonable factfinders as enhancing the foreseeability of danger from intruders, thereby creating a duty on the part of District officials to protect the students from this type of criminal activity." *Id.* Implicit in *Doe*'s holding was the notion that particular care is required by school officials when the safety of young children is involved. *Id.* at 32.

In the present case, unlike *Doe*, there are no factors which created a situation where the intervening criminal act "should have been reasonably anticipated and protected against." *Lacy, supra,* 424 A.2d at 323 (citation omitted). Appellant presented evidence which she claims established that the Naylor Road store was located in the middle of a "criminally active environment." Specifically she showed that there had been 29 reported crimes in the general area during the preceding 36 months. There was no showing, however, that Peoples employees or customers were more exposed to criminal victimization than others in the general population.

Indeed, the criminal offenses cited by appellant are, unfortunately, not much different from what is found in scores of other neighborhoods throughout the city. For example, only one offense, a robbery at a nearby Giant supermarket, involved a firearm and no homicides had been reported. Other reported offenses included a shoplifting in the Safeway supermarket located in the same shopping center, a "snatch" of money from the victim's hand, a stolen automobile, a robbery which included the brandishing of a knife, and other robberies in which weapons were not used. Six of the offenses had occurred at the drug store where Clement worked, but none involved weapons or any significant physical harm to the victims: there were two "snatches" of money out of cash registers, three apprehensions of shoplifters, and one assault upon a security guard. And, as we

have already noted, none of the criminal offenses occurred at the closing time of Peoples, or of any of the other stores in the shopping center.

We have observed that an "urban crime problem ... does not put any additional duty on grocery stores to insure the safety of their customers against all harm." *Ellis v. Safeway Stores, Inc.,* 410 A.2d 1381, 1382 (D.C. 1979). In *Ellis,* a Safeway customer, while waiting in a cashier's line, was assaulted by another customer. The trial court granted summary judgment and we affirmed, concluding that liability for injuries "from the acts of third parties is limited by the tests of reasonableness and foreseeability." *Id.* We held that the "attack was not foreseeable and there was no feasible way [Safeway] could have prevented the unfortunate assault on appellant." *Id.* The same is true here, *i.e.,* the attack on Clement was not foreseeable and there is no feasible way Peoples could have prevented the murder.

In sum, we conclude there is ample support for the trial court's ruling that there were no facts or circumstances from which a jury could find that "Peoples had or should have had a heightened or increased awareness of the danger of this particular criminal act." Accordingly, the trial court did not err in ruling that the evidence was insufficient as a matter of law and that a directed verdict was required. Accordingly, the judgment is

*Affirmed.*

SCHWELB, Associate Judge, concurring in the result:

I concur in the affirmance of the judgment, but on a different ground. Mrs. Clement failed, in my view, to show by expert testimony either that Peoples had violated the applicable standard of care or that any alleged violation was the proximate cause of her husband's murder.

The principal theory espoused by Dr. Bopp, Mrs. Clement's expert witness, was that Peoples should have conducted an "armed sweep" of the parking lot at closing time. Dr. Bopp opined that the security guard, on seeing the red Jaguar, would have been obliged to call the police. These steps,

according to Dr. Bopp, would have saved Mr. Clement's life. Dr. Bopp did not, however, establish that his personal opinion coincided with the national (or indeed local) standard of care. In fact, he did not assert that a single store in the country had ever adopted such a procedure. His testimony was therefore insufficient as a matter of law to establish the standard of care. *Toy v. District of Columbia,* 549 A.2d 1, 7–8 (D.C.1998).

Mrs. Clement also claimed that Peoples violated the standard of care by failing to provide proper lights outside the store. Even if the testimony and exhibits proffered in support of this theory had been admitted, however, there was no showing, nor could there be, that this alleged breach of duty "ha[d] a substantial and direct causal link" to [Mr. Clement's] murder. *See District of Columbia v. Freeman,* 477 A.2d 713, 716 (D.C. 1984). Indeed, I do not discern any basis for concluding that there was any causal link whatever between the lighting and the death of the plaintiff's husband.

Mrs. Clement did not come close to showing that the tragedy was Peoples' fault, or that an impartial jury could reasonably find that it was. I would therefore affirm the judgment for the foregoing reasons without reaching the rather perplexing (to me) issue of "foreseeability."