**Johnnie E. BAILEY, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 93–CV–1529.

District of Columbia Court of Appeals.

Argued Oct. 18, 1995.

Decided Dec. 7, 1995.

---

Nathaniel Baccus, III, Washington, DC, for appellant.

Martin B. White, Assistant Corporation Counsel, with whom Garland Pinkston, Jr., Acting Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before STEADMAN and KING, Associate Judges, and PRYOR, Senior Judge.

KING, Associate Judge:

■ In this negligence action, Johnnie E. Bailey ("Bailey") seeks reversal of the grant of summary judgment in favor of the District of Columbia ("District").[1] The trial court's ruling turned on whether the District had an "increased awareness" of the criminal act that caused her injuries. The trial court ruled there was insufficient record evidence to establish that the criminal act in this case was reasonably foreseeable. We agree and, therefore, affirm.

## I.

On November 17, 1989, Bailey paid an admissions fee to attend a cheerleading competition at Evans Junior High School ("Evans"), on 5600 East Capitol Street, N.E., where one of her daughters was competing. The District's Department of Recreation ("Department") sponsored the event for cheerleading teams from recreation centers located in Ward Seven. When the competition ended at about 9:00 p.m., the crowd, estimated at between five and six hundred people, began leaving the school gymnasium through a door to the outside. After Bailey had left the building, but while she was still on school grounds, an altercation broke out among some people in the crowd whom she

1. Bailey also contends that the trial judge abused discretion by denying Bailey's motion for sanctions for asserted discovery abuse under Super.Ct.Civ.R. 11, 26 and 37. Bailey avers that counsel for the District had represented, that, although a search for certain documents had been undertaken, no such documents could be located. However, when Bailey later deposed some District employees she was informed that the documents in question were in the agency files and that the employees claimed that counsel for the District had never requested that they produce them. Bailey contends that she incurred considerable expense and delay in obtaining the requested documents through depositions and that the failure to produce the documents adversely affected her ability to respond to the motion for summary judgment.

Judge Cushenberry orally denied Bailey's motion to compel discovery and for sanctions, but the transcript of that proceeding, which sets forth the reasons given for the denial, is not part of the record on appeal. Determinations concerning the imposition of sanctions for discovery violations are committed to the discretion of the trial judge. See Lyons v. Jordan, 524 A.2d 1199, 1201 (D.C.1987); Super.Ct.Civ.R. 37. On this record there is no basis for concluding that the trial judge abused that discretion. See Cobb v. Standard Drug Co:, 453 A.2d 110, 111 (D.C.1982) (responsibility for providing record showing that trial court erred rests with party claiming error).

did not know. Gunfire erupted and Bailey was struck in the leg by a ricocheting bullet. There was no evidence that the people involved in the exchange of gunfire were connected with the District government.

Bailey alleges negligence and breach of duty by the District for failing to provide sufficient security personnel at the cheerleading competition. Further, Bailey claimed that the District knew, "and reasonably should have known of the high frequency of violence, and the reputation for violence at Evans Junior High School and on the school grounds."

The District countered through affidavits and depositions that the assault on Bailey was the first violent crime to have occurred at a Department cheerleading competition or at any Department event held at Evans. Furthermore, the District proffered that Department officials responsible for security notified the police department of the event and requested assistance with crowd control. However, no police appeared before the shooting took place.[2]

■ In entering summary judgment in favor of the District, the trial court ruled that: (1) there was insufficient record evidence to establish that the criminal act in this case was reasonably foreseeable; (2) the District's negligence, if any, was not the proximate cause of Bailey's injury; and (3) the District's decisions regarding security arrangements at the cheerleading competition were discretionary, not ministerial, thus the District was shielded from liability by the doctrine of sovereign immunity.[3]

## II.

■ A motion for summary judgment should be granted if "(1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, could not find for the nonmoving party, (3) under the appropriate burden of proof." See Sherman v. District of Columbia, 653 A.2d 866, 869 (D.C.1995). A party moving for summary judgment must demonstrate both that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c) (1995); Young v. Delaney, 647 A.2d 784, 788 (D.C.1994). We conduct an independent review, applying the same standard as the trial judge. See Sherman, supra, 653 A.2d at 869.

## III.

■ Where an injury is caused by the intervening criminal act of a third party, this court has repeatedly held that liability depends upon "a more heightened showing of foreseeability" than would be required if the act was merely negligent. See Clement v. Peoples Drug Store, Inc. 634 A.2d 425, 428 (D.C.1993); McKethean v. Washington Metro. Area Transit Auth., 588 A.2d 708, 716–17 (D.C.1991); District of Columbia v. Doe, 524 A.2d 30, 32 (D.C.1987); Lacy v. District of Columbia, 424 A.2d 317 (D.C.1980). Foreseeability of the risk must be more precisely shown because of the extraordinary nature of criminal conduct. See Clement, supra, 634 A.2d at 428. In analyzing this point, the trial court observed,

[t]he question is not whether defendant should have known that fights, or minor scuffles might erupt at this gathering of 500–600 people on school property in the absence of an adequate security presence, including at the least a police cruiser. Rather, the question is whether the Dis-

---

2. There is nothing in the record disclosing the reason police were not assigned to the event and Bailey does not premise her claim for relief on any alleged failure on the part of the police department to provide security for the event.

3. We need not address the trial court's ruling that the District is insulated from liability under the doctrine of sovereign immunity because we find that summary judgment was proper for the first ground stated. We agree, however, with the trial court's conclusion that there are no regula-

tions specifying a level of security at Department events. The trial court found that the Department exercised its discretion by assigning personnel to oversee crowd control and notifying the police of the time and location of the cheerleading competition. Relying on Elgin v. District of Columbia, 119 U.S.App.D.C. 116, 118–19, 337 F.2d 152, 154–55 (1964), it ruled that the District was therefore shielded from liability.

We also do not address the trial court's alternative ruling with respect to Bailey's failure to establish proximate cause.

trict had a duty to guard against a reasonably foreseeable risk that a person attending the competition would decide to settle a dispute with another individual over an item of clothing by indiscriminately shooting at that person while in the midst of a crowd of spectators. While indiscriminate shootings occur with sickening regularity in our community, and some even more tragically occur at or near school property, this does not mean that the city can be found liable in tort for all such shootings. While the case law teaches that the foreseeability calculus does not require plaintiff to prove that *a previous shooting had occurred at Evans Junior High School after a cheerleading competition* to establish the District's increased awareness of the probable danger of a particular criminal act, the evidence in the Court's view must at least demonstrate that the District should have anticipated the prospect of violent criminal conduct. Having thoroughly reviewed the parties evidentiary submissions, the Court is constrained to conclude there is insufficient record evidence to establish that the criminal act in this case was reasonably foreseeable.

For the reasons stated below, we conclude that the trial court correctly analyzed this issue.

■ Although the occurrence of shootings in, and in the vicinity of, the District's public schools is an unhappy reality, we agree with the trial court that such "generic information," by itself, does not create a duty on the part of the District to protect against the use of firearms under the circumstances presented here. In short, there are insufficient facts in this record to support a determination that the District should have had an "increased awareness" that some third party's unlawful use of a firearm would cause Bailey's injuries.

For example, Bailey proffered no evidence of any shooting incidents, assaults, or other gun-related violence at any Department cheerleading competition or any other De-

partment event held at Evans Junior High School. Indeed, with respect to the safety of cheerleading events, the District presented evidence to the contrary. Bailey only offered affidavits of witnesses who asserted that the area around the school was a "high drug area" and that shootings occurred in that neighborhood. Moreover, while there was testimony from the school principal that police officers were assigned to the school to prevent trespassers during school hours, the trial court noted that the principal "provided no information with respect to the seizure of firearms at the school, assaults committed by unauthorized school visitors, or the use of firearms around the school during the school day or during after school events held at Evans."

We have found liability for a third party criminal act in only one previous case under circumstances at all similar to those presented here. *See Doe, supra,* 524 A.2d at 30.[4] Bailey's reliance on that case, however, is misplaced. *Doe* involved a young female student who was abducted from inside her elementary school classroom, taken from the school grounds, and raped by an unknown intruder during school hours. A jury found the District negligent and awarded damages. On appeal, this court rejected the government's argument that "the District could not have reasonably anticipated nor protected against" the intruder's criminal acts. *See Doe, supra,* 524 A.2d at 31; *see also Clement, supra,* 634 A.2d at 428–29. We held there was sufficient probative evidence presented to the jury to determine "whether school officials were on notice of the danger to students from assaultive criminal conduct by intruders." *Doe, supra,* 524 A.2d at 34.

In *Doe,* the ten-year-old victim had been lured from her classroom by the unknown intruder while the teacher was away from the classroom. A security expert testified that the school's normal procedures "should have included locking the back gate [of the security fence surrounding the back of the school] during school hours, proper maintenance of the automatic locking mechanisms

---

4.  In contrast, we have found no liability for third party criminal actions in at least a half dozen similar cases. *See Clement, supra,* 634 A.2d 425; *McKethean, supra,* 588 A.2d 708; *Lacy, supra,* 424 A.2d 317; *Ellis v. Safeway Stores, Inc.,* 410 A.2d 1381 (D.C.1979); *Cook v. Safeway Stores, Inc.,* 354 A.2d 507 (D.C.1976); and *Graham v. Safeway Stores, Inc.,* 316 A.2d 852 (D.C.1974).

on the doors, visual surveillance and screening of visitors, the issuance of passes to visitors, and maintenance of an operational intraschool intercom." *Doe, supra,* 524 A.2d at 31. There was testimony, however, that the school had not effectively taken any of these precautions. Testimony was also presented that such offenses as robbery, burglary, larceny, and arson had been committed in and around the school during the period immediately preceding the incident in question. *Id.* We held that the evidence showing that the rear gate was left open, that interior door locks were broken, that the intercom did not operate properly, and that unauthorized adult males freely roamed throughout the school 'heightened the awareness' of danger from intruders, and taken together were sufficient to put the District on notice that appropriate safeguards should be instituted to protect the students. *See Doe, supra,* 524 A.2d at 34.

Bailey's factual showing falls far short of what we found necessary to support liability in *Doe.* Bailey's evidence consists primarily of assertions that drug use, shootings, and other criminal acts occurred in the area surrounding the school. Although evidence of that nature was one of the many factors present in *Doe,* the local crime rate was by no means sufficient, by itself, to impose liability. *See Clement, supra,* 634 A.2d at 428–29. Moreover, unlike in *Doe,* Bailey proffered no expert testimony regarding the safety standards applicable in circumstances similar to those present here. In addition, there was no evidence of prior gun-related violence or assaults occurring at the school or at any of the many cheerleading competitions that had been held anywhere in the city. In fact, as we have noted, evidence supplied by the District established the absence of any criminal activity at those events. Moreover, we find it significant that the victim in *Doe* was a ten-year-old, fourth-grade student who was lured from her classroom by someone who had intruded through the lapsed security of the school. In short, the victim was young and she was taken from a place that we would expect to be a safe haven, *i.e.,* her classroom. As we observed in *Clement:* "Implicit in *Doe's* holding was the notion that particular care is required by school officials when the safety of young children is involved." *Id.* at 429. In appropriate circumstances such as in those present in *Doe,* where numerous breaches of security were present, increased measures of protection from potential harm for young children were necessary for the District to avoid liability.

■ In this case, however, Bailey was not a child who was particularly vulnerable to the conduct that befell her, like the victim in *Doe.* Nor did this case involve an intrusion by an outsider into a place, like Doe's classroom, which one would necessarily expect to be safer than other places where the public might gather. Bailey was simply one of several hundred people at a public event supervised by Department of Recreation personnel who were present for crowd control. We agree with the trial court's observation that before the District can be held liable on these facts, "the evidence must at least demonstrate that the District should have anticipated the prospect of violent criminal conduct." No such showing was made here.

Bailey also relies on *Doe v. Dominion Bank of Washington, N.A.,* 295 U.S.App.D.C. 385, 963 F.2d 1552 (1992) ("*Doe II*"), in which inadequate security precautions in a commercial building where the victim was raped, was a critical, if not dispositive, factor in the court's holding that whether a "heightened foreseeability" on the part of the landlord was established was a question for the jury to resolve. The evidence in *Doe II* showed that five floors of a thirteen-story building were vacant and the landlord had not taken steps to secure the vacant floors or to control access to the building. Therefore, outsiders could freely enter the vacant spaces without being observed. The victim was accosted by an intruder who entered the elevator she occupied when it stopped at one of the vacant floors. The victim was then forced into one of the vacant areas where she was raped.

In reversing the entry of judgment as a matter of law at the close of all the evidence, the court observed that the building's owner had "incessant notice" of the danger to tenants from criminal conduct by intruders. *Doe II, supra,* 295 U.S.App.D.C. at 394, 963

F.2d at 1561. For example, the landlord was forewarned of

> deficient building security-unsecured vacant floors and offices, freely accessible via unlocked stairwells and unprogrammed elevators; criminal or unauthorized conduct within the building, including a burglary ..., thefts of personal and office property, drug use, and sexual activity; and tenant complaints of threatening and aggressive intruders appearing in the building in the month immediately preceding the rape.

*Doe II, supra,* 295 U.S.App.D.C. at 395, 963 F.2d at 1562. The court held that the foreseeability of the criminal act was a jury question because Doe presented sufficient evidence that the landlord, having notice of this criminal activity for the two and a half years preceding the rape, failed to secure the vacant areas. *Id.* at 394–95, 963 F.2d at 1561–62. Indeed, one judge observed that under the facts presented, "[T]here was a virtual certainty that 'something bad' would happen." *Id.* at 396, 963 F.2d at 1563 (Williams, J., concurring). Unlike the plaintiff in *Doe II*, however, Bailey offered neither evidence of actual criminal activities nor proof of inadequate security, that could have put the District on notice of the foreseeability of the type of harm she suffered.

We conclude, as we did in *Clement*, that the trial court was correct in ruling that the record evidence was "insufficient ... to establish that the criminal act in this case was reasonably foreseeable." *See Clement, supra,* at 429. There were no circumstances or facts in the record from which a jury could find that the District had a "heightened" or "increased" awareness. Accordingly, the judgment of the trial court is

*Affirmed.*