**Herman TAYLOR, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 94–CV–1171.

District of Columbia Court of Appeals.

Submitted Feb. 18, 1997.

Decided March 20, 1997.

Clinton A. Jackson, with whom Obren V. Barnes, Washington, DC, was on the brief, for appellant.

Charles F.C. Ruff, Corporation Counsel, with whom Charles L. Reischel, Deputy Corporation Counsel and Phillip A. Lattimore, III, and Maria Merkowitz, Assistant Corporation Counsels were on the brief, for appellee.

Before WAGNER, Chief Judge, and SCHWELB and REID, Associate Judges.

REID, Associate Judge:

Appellant Herman Taylor filed a complaint containing five counts against appellee District of Columbia on January 27, 1992. Although the caption under the word "complaint" read "assault—negligence—civil rights," Mr. Taylor made several claims: (1) violation of rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and under 42 U.S.C. §§ 1981, 1983, 1985 and 1986 (1994); (2) violation of D.C.Code § 4–176 (1994 Repl.) and assault and battery; (3) false arrest and imprisonment; (4) intentional infliction of emotional distress; and (5)

negligent injury due to gross negligence in and reckless failure to train and supervise the Police Department. The complaint was not filed individually against any police officers.

The trial court directed a verdict in favor of the District. Mr. Taylor filed a timely appeal, contending that (1) the trial court erred in granting a directed verdict on his claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, the Fourth, Fifth, Eighth and Fourteenth Amendments, as well as his claims for false arrest and imprisonment;[1] and (2) the trial court abused its discretion in failing to order, as a discovery sanction, that facts set forth in his motion for sanctions were deemed to be established with regard to his claims. We reverse the trial court's judgment regarding the false arrest and imprisonment claim, and affirm its judgment with respect to Mr. Taylor's other claims.

## FACTUAL SUMMARY

The only witness to testify during his jury trial was Mr. Taylor. Although Mr. Taylor anticipated calling Police Officer Stan Brown, efforts to subpoena the officer failed. Mr. Taylor declined to proceed with two other police officers who were available for testimony. The District presented no witnesses because of discovery sanctions imposed by the trial court that barred the District from calling police officers who had refused to cooperate with discovery and deposition requests.

Mr. Taylor testified that he and Officer Stan Brown, a friend from college, had dinner together at a restaurant on January 26, 1991, at approximately nine-thirty p.m. Around midnight, Mr. Taylor drove Officer Brown to the First District Police Precinct to see his girlfriend. Officer Brown instructed Mr. Taylor to pull into the driveway of the police precinct, where he [Brown] got out of Mr. Taylor's pickup truck and left Mr. Taylor inside. While Mr. Taylor was inside his truck, Officer Jessie Porter approached him,

informed him that he could not park in the driveway, and asked him to move his vehicle. Mr. Taylor attempted to explain that he was waiting for Officer Brown. Officer Porter "quickly . . . issued [Mr. Taylor] a citation" by placing a ticket on the windshield of the truck.

Mr. Taylor thought the officer should have handed him the ticket. He got out of his truck and removed the ticket from the windshield. A piece of carbon paper fell away from the ticket as another officer, Officer Michael Fulton, neared the truck. Officer Fulton instructed Mr. Taylor to pick up the carbon. Mr. Taylor refused to retrieve the carbon. The two men began to argue. Mr. Taylor testified that Officer Fulton hit him "[w]ith a closed fist," and that he "was thrusted or thrown to the ground." Other officers from the precinct arrived on the scene and Mr. Taylor was "beaten, hit and kicked." Mr. Taylor grabbed his head, and the officers tried to pull his hands away from his head. He said he was "assaulted" for about five minutes. He was handcuffed and taken to a cell for one or two hours. Police officers removed him from the cell and took him to D.C. General Hospital where he was treated for abrasions and lacerations. His face was swollen. He suffered "a severe abrasion to [his] forehead" and retains "scars to [his] knees and to [his] elbows." After being treated at D.C. General Hospital, Mr. Taylor was placed in "a crowded jail cell" where he was held for several hours before being released on bond around seven p.m. on January 27, 1991. He was charged with assaulting a police officer.[2]

Mr. Taylor testified that he was unable to work for three to four weeks after the police precinct incident. His work as a salesperson required him to meet face to face with prospective customers, and he was unable to do his work because of his appearance and because he could not "function without extreme inconvenience on my leg." Mr. Taylor introduced pictures reflecting his injuries and a

---

1. The court also directed verdicts on the intentional infliction of emotional distress, negligent training and supervision, and assault and battery claims. However, Mr. Taylor does not challenge dismissal of those claims on appeal.

2. The charge was dismissed later for want of prosecution.

bill from D.C. General Hospital. He estimated that he grossed approximately $200,000 in sales as a salesperson.

At the end of Mr. Taylor's testimony, the trial judge informed him that it was "problematic ... as to how you have sustained any claim based upon the evidence that has been presented in this court." With respect to negligence, the trial judge noted that Mr. Taylor had presented no expert witness concerning the standard of care and the breach of that standard. With respect to Mr. Taylor's claim under 42 U.S.C. § 1983 and false arrest and imprisonment, the trial judge stated:

> [T]here has to be a demonstration of violation of specific constitutional rights which are guaranteed to your client. And what this Court has heard is that he was in a driveway at the police station. He was asked to leave, and instead of leaving, he wanted to explain that Officer Brown said he could stay there.
>
> And so ... I think that it is problematic that you have made out a prima facie case with regard to unlawful arrest or imprisonment, that the actions in terms of giving a ticket were unjustified, and I think it's problematic ... that you're going to be able to make out your case....
>
> So you have to be able to establish ... how a reasonable juror could find that the act of giving a ticket under those circumstances, although the officers were not justified in doing the same, and the situation escalated and the question becomes whether or not that escalation amounts to excessive force.

On the second day of the trial, the trial judge concluded that "[t]here is no assault and battery. The police officers weren't served. That is an intentional tort. It has to be as to the police officers." Furthermore, the trial court informed Mr. Taylor that,

> In order to connect the District of Columbia, you ... have to say what the officers did ... was in some way facilitated, fostered, was the policy of the District of Columbia. And you don't have any evi-

dence in that regard, at least as far as I can discern.

The trial court granted the motion for a "directed verdict on the negligence count and the [42 U.S.C. § ] 1983 [count]." A directed verdict also was granted with respect to the 42 U.S.C. §§ 1981, 1985 and 1986 claims. With regard to the assault and battery count, the trial court indicated that, "you can't hold the District vicariously liable if you don't have the principal actors." The trial court reached the same conclusion with regard to the alleged violation of D.C.Code § 4–176,[3] "[t]here can't be an assault and battery because there is no individual liability here, because the two individuals that are alleged to have engaged in this improper conduct are not before the Court. And so I don't see that Title 4 Section 176 is implicated." Mr. Taylor did not sue Officers Fulton and Porter. The trial court reached the same conclusion with respect to the claim of intentional infliction of emotional distress, "you can't have an intentional infliction of emotional distress by a Governmental entity where ... the underlying basis for the same has not been proven up.... [A]bsent a finding with regard to the individual officers, there is—there can be no vicarious liability for the District of Columbia. And so with regard to all of your intentional torts, absent a finding as to the principal actors, the District can have no vicarious liability ...."

The trial court emphasized the lack of evidence on the false arrest and imprisonment counts:

> The first question is whether or not the arrest itself was based upon sufficient justification that would give rise to a reasonable belief that a crime had been committed. Now [Mr. Taylor] testified that he pulled up into a driveway at the 1st District Police Station because his buddy, Officer Brown, said I want to run in to see my girl, I'm going to run back out.
>
> Now there was no evidence that was presented that this was in any way a lawful parking area, ... or that he had any right

---

**3.** D.C.Code § 4–176 provides: "Any officer who uses unnecessary and wanton severity in arresting or imprisoning any person shall be deemed guilty of assault and battery, and, upon conviction, punished therefor."

to be in that location. An officer told him, sir, move your car.... Your client does not move his car.

In short, the trial court concluded that Mr. Taylor had failed to prove a *prima facie* case for any of the claims asserted in his complaint.

## ANALYSIS

■ We turn first to Mr. Taylor's argument relating to his claims under 42 U.S.C. §§ 1981, 1983, 1985 and 1986, and the Fourth, Fifth, Eighth and Fourteenth Amendments. Even viewing the evidence in the light most favorable to Mr. Taylor and giving him the benefit of all reasonable inferences, as we must, we agree with the trial court that he failed to establish a *prima facie* case. *See Abebe v. Benitez*, 667 A.2d 834, 836 (D.C.1995). Three elements must be proved to establish a violation of § 1981:(1) plaintiff's membership in a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination involving the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). *See also Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). Here, Mr. Taylor presented no facts or testimony evidencing the District's intent to discriminate against him. Hence, his § 1981 claim must fail.

■ A *prima facie* case under § 1983 requires a showing of at least: (1) conduct committed by a person acting under color of [state] law; and (2) conduct that deprives a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). With respect to the second element, a plaintiff must demonstrate that the deprivation resulted from some "established [governmental] procedure." *Id.* at 543, 101 S.Ct. at 1916. Mr. Taylor failed to sustain his burden with respect to the second element; no testimony was introduced concerning any established procedure of the District. Moreover, there was no showing of deliberate indifference by the District in the training and supervision of its police officers. *See City of Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989). Therefore, Mr. Taylor's § 1983 claim must fail. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

■ Sections 1985 and 1986 are linked. Failure to establish a *prima facie* case under § 1985 results in failure under § 1986. *Mian, supra*, 7 F.3d at 1088. Four elements constitute a *prima facie* case under § 1985(3): "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Id.* at 1087 (citation omitted). Mr. Taylor introduced no evidence showing a conspiracy by the District of Columbia. Thus, he cannot prevail on his § 1985 claim. Since § 1986 requires a demonstration of a person's knowledge of the § 1985 conspiracy, Mr. Taylor's § 1986 claim must also fail. *Id.* at 1088. Furthermore, because Mr. Taylor's Fourth, Fifth, Eighth and Fourteenth Amendment claims are dependent on his §§ 1981, 1983, 1985 and 1986 actions, they too must fail.

■ To prove false arrest and imprisonment, Mr. Taylor was required to demonstrate that the police acted without probable cause, in an objective constitutional sense, to effectuate his arrest. *Welch v. District of Columbia*, 578 A.2d 175, 176 (D.C.1990). Our case law also permits police officers to defend against a false arrest charge on the basis of a subjective test, that "the officers had a good faith reasonable belief that they were acting lawfully." *District of Columbia v. Murphy*, 635 A.2d 929, 932 (D.C.1993). Mr. Taylor was arrested for assault of a police officer, in violation of D.C.Code § 22–505 (1996 Repl.). The only evidence before the trial court was Mr. Taylor's account of what happened in the driveway of the police

precinct. The District presented no witnesses due to discovery sanctions. Under either the objective or the subjective test regarding the validity of the arrest, the issue here is whether a jury could find Mr. Taylor's account of the incident credible, and thus conclude either that there was no probable cause basis, or no subjective good faith basis to arrest Mr. Taylor for assaulting a police officer.

On a motion for a directed verdict, "the judge is not the trier of fact. As long as there is some evidence from which jurors could find that [Mr. Taylor] has met [his] burden, [the] trial judge must not grant a directed verdict." *Abebe, supra,* 667 A.2d at 836 (citations omitted). Here, the jury could have credited Mr. Taylor's account and concluded that there was neither probable cause in the objective constitutional sense nor the subjective good faith sense to arrest Mr. Taylor for assaulting a police officer.[4] Understandably, the trial court was troubled by Mr. Taylor's counsel's somewhat limited knowledge of the elements of each of the asserted causes of action. Nonetheless, we are constrained to conclude that the trial court erred in directing a verdict on the false arrest and imprisonment claim. Had the jury concluded that the police officers were liable for false arrest and imprisonment, it may also have found the District, their principal, liable for the acts of its agents. In *Wade v. District of Columbia,* 310 A.2d 857, 863 (D.C.1973) (en banc), a case in which the mother of a minor sued the District for damages for assault and battery on and false arrest of her child, this court held "that the District of Columbia may be sued under the common law doctrine of *respondeat superior* for the intentional torts of its employees acting within the scope of their employment." Because "there [was] some evidence from which jurors could find that the party has met its burden," we are constrained to conclude that the trial court improperly directed a verdict in favor of the District on Mr. Taylor's false arrest and imprisonment claim. *See Abebe, supra,* 667 A.2d at 836.

Finally, Mr. Taylor argues that the trial court abused its discretion in failing to order, as a discovery sanction, that facts set forth in his motion for sanctions were deemed to be established with regard to his claims. A trial court enjoys broad discretion in fashioning discovery sanctions, and we will not find an abuse of discretion unless the trial court "[imposed] a penalty too strict or unnecessary under the circumstances." *Dodson v. Evans,* 204 A.2d 338, 341 (D.C. 1964) (citation omitted). Here, the District disallowed the testimony of the police officers as a sanction. On the record before us we see no abuse of discretion. *See Bailey v. District of Columbia,* 668 A.2d 817, 818 n. 1 (D.C.1995); *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982).

For the foregoing reasons, we reverse the trial court's judgment regarding the false arrest and imprisonment claim, and affirm its judgment with respect to Mr. Taylor's other claims.

*Affirmed in part and reversed in part.*

---

4. The trial court appeared to base its conclusions not on the arrest for assaulting a police officer, but on the failure of Mr. Taylor to move his pickup truck from the driveway of the police precinct.